COUNTY OF FREEBORN v. WILLIAM H. BRYSON
AND OTHERS.
STATE OF MINNESOTA, BY WARREN SPANNAUS,
ATTORNEY GENERAL, AND ANOTHER,
INTERVENORS.

210 N. W. 2d 290.

August 31, 1973—Nos. 43569, 43574, 43582.

*Christian, Slen, Savelkoul, Johnson & Broberg,* and *Rolf O. Slen,* for appellants Bryson.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, *Jonathan H. Morgan,* Assistant Attorney General, and *Geoffrey P. Jarpe,* Special Assistant Attorney General, for appellant state.

*Lawrence D. Downing, Michael J. Mollerus,* and *Will Hartfeldt,* for appellant Sierra Club.

*Robert C. Tuveson,* County Attorney, and *Bob A. Goldman,* Assistant County Attorney, for respondents.

*Ralph T. Keyes* and *Mentor C. Addicks, Jr.,* for The Association of Minnesota Counties, amicus curiae.

KELLY, JUSTICE.

This action was brought in response to condemnation proceedings initiated by the County of Freeborn for the purpose of acquiring certain lands for the construction of a county highway. William H. Bryson and Arlene Bryson, owners of lands sought to be condemned, filed an answer in the condemnation proceedings and brought this action pursuant to Minn. St. c. 116B (Minnesota Environmental Rights Act) alleging that the proposed condemnation would materially and adversely affect portions of a natural wildlife marsh. Permission was granted to the attorney general and the Sierra Club to intervene on behalf of the

landowners. The condemnation action and the action pursuant to the Environmental Rights Act were consolidated for trial. The landowners and both intervenors appeal from an order dismissing the action for injunction for failure to establish a prima facie case under the statute. We reverse and remand.

The main issue on this appeal is whether the county's power to condemn land for a public use is limited by the Environmental Rights Act enacted by the 1971 Legislature.

The Brysons are the owners and operators of a 120-acre farm located in Freeborn County. The farm consists of three contiguous 40-acre squares forming the configuration of an inverted "L." Winding through the property is an area of marshland which is part of a larger slough area beginning south of the farm and continuing several miles north to Freeborn Lake.

Of the 120 acres, all but 19 acres have been improved for agricultural purposes. Of these remaining 19 acres, which are designated by the landowners as a "wildlife area," approximately 7½ acres consist of natural marsh or wetlands including three open water ponds. This marsh area contains abundant and varied plant and animal life. The area has been developed as a wildlife habitat through fir tree plantings, excavation of the open water ponds and maintenance of a 1-acre unharvested food plot for the wildlife.

Expert witnesses testified that marshes or wetlands provide a unique natural ecosystem or environment because they are capable of supporting a greater diversity of life than other habitats such as woodlands, tundra, desert, or grasslands. This particular marshland was regarded by the experts as an integrated unit with the larger slough complex. Because of its natural attributes, it was considered a desirable waterfowl habitat and production area.

The county proposed to condemn a strip of the Bryson farm for the purpose of relocating a county highway. The reconstruction was to primarily utilize existing county and township roads. To avoid curves in the highway, it was necessary to acquire the

strip across the landowners' farm. The proposed highway would cross approximately 600 feet of the marsh area eliminating approximately .7 acre of marsh on the Bryson property, including one of the open water ponds and surrounding vegetation.

Various alternative routes were considered by the county and were rejected principally because they were less safe in design, more costly in construction, and of less utility in accomplishing the objective of the highway relocation. Several additional alternative routes were proposed by the landowners and intervenors at trial, all of which incorporated curves.

The expert witnesses all stated their opinion that the construction of the proposed highway would have a significant detrimental effect on the marsh area's value as a wildlife area because it would eliminate some of the area's natural assets, destroy the quietness and solitude of the marsh, increase animal and bird fatalities, and have other adverse effects.

In the court below, the county first presented evidence in support of its petition for condemnation of the subject land for highway purposes. Following this, the trial court denied the Brysons' motion for a dismissal. The Brysons and intervenors State of Minnesota and Sierra Club then presented their evidence for injunctive relief to restrain the county from acquiring the Bryson land and from constructing a highway on it, claiming such conduct was prohibited by the Minnesota Environmental Rights Act. The county then moved for dismissal of the action for injunctive relief, contending that the Brysons and intervenors had failed to present sufficient evidence to sustain their burden of proof under the act by establishing a prima facie case. This motion was granted. While the trial court certified to this court two issues as important and doubtful, the order dismissing the complaint for injunctive relief was in and of itself appealable under Rule 103.03(b), Rules of Civil Appellate Procedure. Thus, the scope of our review is broader than these narrow questions certified by the trial court:

"A. Is the general power of a county under Minnesota Stat-

utes 163.02 and 117.01 to exercise the power of eminent domain for a public use; to wit, a highway, limited by the provisions of Chapter 952, Laws of 1971, (The Environmental Rights Act) where such highway would affect a family-owned farm, a portion of which includes wetlands used as a private game refuge and no part of such lands are dedicated to the public?

"B. Is the scope of Judicial Review of the 'necessity' for a taking changed as a result of Chapter 952, Laws of 1971?"

While the scope of our review is not limited to these questions, nonetheless, our review is circumscribed to a great extent by the fact that the appeals here are from the order dismissing the complaint for injunctive relief and that order was granted prior to the county's asserting any affirmative defenses it may have under the statute (§ 116B.04), such as that there is no feasible and prudent alternative, that the county's conduct would be consistent with and reasonably required for promotion of the public health, safety and welfare in light of the state's paramount concern for the protection of its air, water, land and other natural resources from pollution, impairment, or destruction, and economic considerations. However, economic considerations alone would not constitute a defense. Minn. St. 116B.04.

While the trial court found that the landowners and intervenors had not sustained their burden of proof and had not made a prima facie case under the act, it did not directly pass upon the affirmative defenses that the county might have as the trial had not reached the point when the county would normally adduce evidence in this regard. While the county did introduce evidence in support of its condemnation petition which was relevant to a defense under the Environmental Rights Act, it did not offer it as such. The trial court commented on this in the memorandum made a part of its order as follows:

"It might have been a simple matter for the County of Freeborn to have suggested when the Landowner and Intervenors rested that the evidence submitted with respect to the Petition

for Condemnation and the various routes considered for the laying out of the road that such evidence might apply with like force to that portion of the case where Landowners and Intervenors presented their evidence under the Act, but notwithstanding the absence of such a statement by the County of Freeborn, there is evidence in the case which deals with various routes and all facts which legitimately bear on the case ought to be considered."

Thus, the court below considered this evidence in connection with the issue of the prima facie case for injunctive relief but made no finding on an affirmative defense.

This appeal raises questions of first impression to this court. The issues are: (1) Whether the parties have standing to bring an action under the Minnesota Environmental Rights Act; (2) whether the statute limits a county's power of eminent domain; (3) whether a prima facie case has been established under that act. An additional question in this type of case would normally be presented when such a prima facie case has been established: Has the county established an affirmative defense under the statute? As we have indicated, the affirmative defense issue was not fully presented to the court below.

■ The trial court in his memorandum discussed whether the landowners had standing to maintain an action for injunctive relief under Minn. St. c. 116B because, as owners of a family-owned farm, the statute exempted them from being sued under the act. It was the trial court's view that since the landowners could alter the area as desired, they could not preclude the county's action and that the intervenors would have no greater standing than the landowners.

The Environmental Rights Act permits "any person" to maintain an action under the statute and likewise provides that "any person" may be named as a defendant.[1]

---

[1] Minn. St. 116B.03, subd. 1, reads in part: "*Any person* residing within the state * * * may maintain a civil action * * * for declaratory or equitable relief * * * against *any person*, for the protection of the air, water, land, or other natural resources located within the state,

Minn. St. 116B.02, subd. 2, defines person as follows:

" 'Person' means *any natural person*, any state, municipality or other *governmental or political subdivision* * * * and *any other entity, except a family farm*, a family corporation or a bona fide farmer corporation." (Italics supplied.)

Although it is not entirely clear whether a family farm as an entity could bring an action under the act, it is unnecessary to decide this question in the present case. An individual who owns a farm remains a "natural person" within the statutory definition. It is illogical to believe that the legislature intended that an individual be precluded from bringing an action under the provisions of the act merely because he is engaged in the occupation of farming. Furthermore, Minn. St. 116B.01 declares in part—

"* * * *each person* is entitled by right to the protection, preservation, and enhancement of air, water, land, and other natural resources within the state * * *." (Italics supplied.)

There are no additional reasons to preclude a farmer from seeking to prevent environmental harm by another merely because the threatened conduct is to occur on his own land.

Similarly, the attorney general and the Sierra Club have standing under the act. Minn. St. 116B.03, subd. 3, reads:

"In any action maintained under this section, the attorney general may intervene as a matter of right * * *. Other interested parties may be permitted to intervene on such terms as the court may deem just and equitable in order to effectuate the purpose and policies [of the act]."

This statute authorizes the attorney general to intervene as a matter of right and other groups, as the Sierra Club, to permissively intervene as interested parties. When the trial court granted permission to intervene, both became proper parties

whether publicly or privately owned, from pollution, impairment, or destruction * * *." (Italics supplied.)

plaintiff. See, State ex rel. Bergin v. Fitzsimmons, 226 Minn. 557, 33 N. W. 2d 854 (1948). Therefore, the landowners, attorney general, and the Sierra Club all have standing to maintain an action under the act.

■ It is not entirely clear whether the trial court reached the conclusion that a prima facie case had not been established under the act because it felt that the act did not limit the power of eminent domain possessed by governmental subdivisions or because the evidence did not establish a prima facie case. We conclude that the act did limit the power of governmental subdivisions in eminent domain proceedings.

The power of eminent domain inheres in the state as an essential attribute of sovereignty. State, by Burnquist, v. Flach, 213 Minn. 353, 6 N. W. 2d 805 (1942). A delegation of that power may be modified or withdrawn by the legislature. State, by Peterson, v. Severson, 194 Minn. 644, 646, 261 N. W. 469, 471 (1935) ; 1 Nichols, The Law of Eminent Domain (Rev. 3 ed.) § 3.21. Cf. Monaghan v. Armatage, 218 Minn. 108, 15 N. W. 2d 241 (1944), appeal dismissed, 323 U. S. 681, 65 S. Ct. 436, 89 L. ed. 552 (1945).

State ex rel. Olcott v. Hawk, 105 Ore. 319, 208 P. 709 (1922), discussed the fact that in Oregon the general power to condemn land and waterways for public purposes was authorized by statute. A subsequent statute withdrew certain streams and the land through which they flowed from appropriation or condemnation except for use as public parks. The court held that this statute was "a plain revocation of authority for the condemnation of land in connection with, or bordering upon, the streams," and that the state was therefore prohibited from condemning the land for use as fish hatcheries. 105 Ore. 334, 208 P. 714.

The Environmental Rights Act authorizes actions for the protection of natural resources from pollution, impairment, or destruction, defined in Minn. St. 116B.02, subd. 5, to include "any conduct" which has a material adverse effect on the environ-

ment.[2] The question before us is whether the legislature intended the exercise of the power of eminent domain by a governmental subdivision to be included within the term "any conduct." The trial court admitted that the term was sufficiently broad to include the exercise of that power. In spite of this, the court felt that the legislature did not intend a limitation on a county's powers absent a specific reference to eminent domain in the act. We cannot agree with this construction of the act. We believe the legislature intended the phrase "any conduct" to have broad, all-inclusive application without enumerating every appropriate situation in which the act could be invoked.

The word "any" has been construed by this court in the context of a lease provision. In Orme v. Atlas Gas & Oil Co. 217 Minn. 27, 36, 13 N. W. 2d 757, 763 (1944), we said:

"The use of the words 'any' or 'any other' is sweeping in its reach. See Rollins v. Rice, 60 Minn. 358, 62 N. W. 325. 'Any' is all-comprehensive. Unless modified by the context, it includes all persons and things referred to indiscriminately."

Where a statute such as this is drafted in broad and comprehensive language, we are not justified in engrafting exceptions upon it. See, State v. Tennyson, 212 Minn. 158, 161, 2 N. W. 2d 833, 835 (1942).

Even a cursory reading of the act will indicate that the purpose of the legislation was to ensure that effects on the environment be considered by persons conducting any type of activities within the state. The purpose of the act is set forth in Minn. St. 116B.01, which reads in part:

"* * * The legislature further declares its policy to create

---

[2] Minn. St. 116B.02, subd. 5, defines "pollution, impairment or destruction" as "any conduct" which (1) violates environmental quality standards or regulations, or (2) "materially adversely affects or is likely to materially adversely affect the environment." Since it is not contended that the county's conduct would violate any environmental quality standard or regulation, our consideration is limited to whether the conduct would materially adversely affect the environment.

and maintain within the state conditions under which man and nature can exist in productive harmony in order that present and future generations may enjoy clean air and water, productive land, and other natural resources with which this state has been endowed."

From the language of the act, we conclude that the legislature intended in appropriate cases that the power of eminent domain possessed by governmental subdivisions—including the power of a county to condemn land for a public highway—was to be limited by the provisions of the act.

We make no attempt to set forth all the case law definitions of the "necessity rule" referred to by the trial court in connection with question B. For our purposes, it is sufficient to say that under that rule in eminent domain cases the scope of review by courts as to the necessity for the taking of particular lands was limited. The matter of necessity was almost exclusively left to the judgment of the condemning body and courts would interfere only when the action taken by that body was manifestly arbitrary or unreasonable. State, by Head, v. Christopher, 284 Minn. 233, 170 N. W. 2d 95 (1969), certiorari denied, 396 U. S. 1011, 90 S. Ct. 570, 24 L. ed. 2d 502 (1970).

It follows that whenever the Minnesota Environmental Rights Act is successfully asserted in litigation for the purpose of limiting the taking of lands through eminent domain proceedings, that the so-called "necessity rule" is limited. Thus, in the instant case, if the county does not successfully assert its defenses under the Minnesota Environmental Rights Act, it will be prevented from taking the subject lands and to that extent the necessity rule is limited by force of judicial review.

■ The defendants next urge that the Brysons and intervenors have not met their burden under the statute. Minn. St. 116B.04 places the burden of proof on the plaintiff to make—

"* * * a prima facie showing that the conduct of the defendant has, or is likely to cause the pollution, impairment, or de-

struction of the air, water, land or other natural resources located within the state \* \* \*."

Thus, two elements must be proved: (1) A protectable natural resource, and (2) pollution, impairment or destruction of that resource. The act includes within the definition of natural resources all animal, botanical, water, land, timber, soil, and quietude resources.[3] As discussed above, pollution, impairment or destruction includes any conduct which has or is likely to have a materially adverse effect on the environment. § 116B.02, subd. 5.

The evidence shows that the marsh area is a natural resource within the meaning of the statute. The area contains abundant animal and botanical life along with water, land, timber, soil, and quietude resources. We similarly conclude that the evidence shows that the construction of the highway would materially adversely affect this natural resource. In support of this, we point out the following uncontroverted facts: (1) The highway would divide a natural marsh; (2) the entire marsh is an ecological unit; (3) the construction would eliminate some of the area's natural physical assets; (4) the highway would be a relatively high-speed, high-volume roadway which would increase animal fatalities; and (5) the quietness and solitude of the marsh would be disturbed. In addition, there are the uncontroverted opinions of the expert witnesses that the highway would have a significant detrimental effect on the marsh.

We therefore conclude that the Brysons and intervenors have established a prima facie case under the Environmental Rights Act. This, however, represents only the barest of prima facie showings because there is no certainty that the wildlife area will be continued as a natural resource by the landowner. It has only been shown that, at present, the area constitutes a protectable natural resource. A travesty of justice would occur if, after the county rerouted the highway at a higher cost resulting in a less desirable highway, the landowner or his successor decided to

---

[3] Minn. St. 116B.02, subd. 4.

divert the area to other uses. An action under the act could not prevent such conduct since a family farm is excepted from suit.

■ Once a prima facie showing of potential environmental harm is established, Minn. St. 116B.04 provides in part:

"* * * [T]he defendant may rebut the prima facie showing by the submission of evidence to the contrary. The defendant may also show, by way of an affirmative defense, that there is *no feasible and prudent alternative* and the conduct at issue is *consistent with and reasonably* required for the promotion of the public health, *safety, and welfare* in light of the state's paramount concern for the protection of its air, water, land and other natural resources from pollution, impairment, or destruction. *Economic considerations alone shall not constitute a defense hereunder.*" (Italics supplied.)

Obviously, the legislature intended that there should be a balancing of ecological against technological considerations through the Environmental Rights Act. A prima facie case may be rebutted by showing that there is "no feasible or prudent alternative" or that the conduct is in the best interest of the public. When the natural resource is located on land which would be exempt from suit against the landowner, such as a family farm, the fact that there is no guarantee that it will be preserved by the landowner's future conduct may be balanced against a prima facie showing that a protectable natural resource presently exists. This fact would only be relevant in instances of potential environmental harm where, if the landowner were to act in a similar manner, no action under the act could prevent it. In all other instances the resource could be protected and harmful conduct could be prohibited at a future date no matter what "person" attempted it.

In the present case, the county presented some evidence that various alternative routes were considered and rejected to show that their condemnation was not arbitrary or capricious. However, this evidence was not offered as an affirmative defense

under the Environmental Rights Act. At the close of the Brysons' and intervenors' evidence, the defendants' motion for dismissal of the injunction action was granted. Rule 41.02(2), Rules of Civil Procedure, provides that a defendant does not waive his right to present evidence if his motion to dismiss at the time plaintiff completes his evidence is denied. It follows that when the trial court's grant of the motion is reversed on appeal, the defendants should be allowed to offer the evidence submitted on their condemnation petition as a defense and to present such other matters as may be a defense under the Environmental Rights Act.

We therefore remand the case to permit the defendants to present any affirmative defenses they may have under the Environmental Rights Act and to give to the Brysons and intervenors the opportunity of rebutting such defenses.

Reversed and remanded.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.