**Lida E. ROLANDER and Doris L. Brambilla, individually and on Behalf of the State of Minnesota, Appellants,**

v.

**MEEKER COUNTY, et al., Respondents.**

No. C4–86–225.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Bruce E. Goldstein, Schermer, Schwappach, Borkon, Ramstead & Mariani, Ltd., Minneapolis, for appellants.

William H. Dolan, Meeker Co. Atty., Litchfield, for respondents.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

The court, on its own motion, stayed Meeker County's condemnation proceedings of appellants' land until such time as an environmental impact "study" could be undertaken and completed by the Department of Natural Resources (DNR). The reconstruction project did not qualify for a formal procedure as designated by the Minnesota Environmental Rights Act. The County moved to lift the stay that had been granted by the court. Appellants again moved for a temporary injunction. The court denied the injunction, but issued an order granting a stay of the condemnation proceedings pending this appeal. We affirm.

## FACTS

Appellants Lida Rolander and Doris Brambilla are owners of lakeshore property in Meeker County which is the subject of condemnation proceedings by the County. Access to the property is via a gravel road. The Rolanders have one cabin situated between the road and the lake, while the Brambillas have a cabin located on the same side of the road and own several others on the opposite side.

Meeker County has considered making improvements to the road for nearly 40 years. The stretch of roadway the County seeks to reconstruct is known as Meeker County State Aid Highway No. 9 (MCSAH #9) and is classified by the Department of Transportation as a "collector." By definition, MCSAH #9 collects traffic from local or township roads and provides access to "arterials" and cities. State Aid Highways are required to meet design specifications in order to maximize safety and efficiency.

MCSAH #9 has a speed limit of 55 m.p.h. except for a three-quarter mile section which has a speed limit of 30 m.p.h. due to a dangerous curve and structural

hazards in the road surface. This section of the road fails to comply with the minimum State Aid Safety Standards. The curve in the roadway occurs near the Rolander property.

The County considered three alternatives when it decided to bring this stretch of road up to standards. It wanted to make as much use as possible of the existing road, find the least expensive alternative, and cause the least destruction to the environment while qualifying the project for State aid funds. Finally, County officials decided that, based on the above criteria, "alternative # 1," as designated by County officials, was the best alternative.

In April 1984 an informational meeting was held to explain the three alternative plans under consideration. Mrs. Rolander and her son attended the meeting. The Brambillas were told of the plans at a separate meeting. The County Engineer then visited the landowners to see if they would sign easements over their property. Mrs. Rolander sent a written reply stating that she would not sign an easement.

In July 1984 the Meeker County Board of Commissioners passed a resolution authorizing condemnation of property needed to complete the project. In May 1985 appellants commenced this action, based on the Minnesota Environmental Rights Law and the Federal Civil Rights Act, and moved for a temporary injunction restraining the County from condemning their property. The court denied appellants' motion and stayed the condemnation proceedings until such time as an environmental impact study could be undertaken by the DNR. Meeker County contacted the DNR and requested that the study be performed. An on-site survey was made by Leo Getsfried, Area Hydrologist; John Schladweiler, Non-game Biologist; and Thomas N. Balcom, Environmental Review Coordinator. Balcom indicated that, out of the three alternatives considered, # 1 had the least environmental impact.

### ISSUE

Did the trial court err in denying appellants' motion for a temporary injunction under the Minnesota Environmental Rights Act and/or the Federal Civil Rights Act?

### DISCUSSION

The Minnesota Supreme Court in *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762, 782 (Minn.1977), held:

> The Minnesota Environmental Rights Act does not prescribe elaborate standards to guide trial courts but allows a case-by-case determination by use of a balancing test, analogous to the one traditionally employed by courts of equity, where the utility of a defendant's conduct which interferes with and invades natural resources is weighed against the gravity of harm resulting from such an interference or invasion.

It is a long-standing rule in Minnesota that an appellate court will not overrule the decision of a trial court to grant or deny injunctive relief in situations where the evidence is conflicting. *Minneapolis Electric Lamp Co. v. Federal Holding Co.*, 161 Minn. 198, 201 N.W. 324 (1924).

Appellants questioned the validity of the court's decision to stay the condemnation proceedings pending the completion of the environmental impact "study." They allege there is no provision in the Minnesota Environmental Rights Act (MERA) for such a "study," and therefore it has no legal significance.

Minnesota Rule 4410.4300, subp. 22 and 27, prescribes when an Environmental Assessment Worksheet (EAW) is mandatory:

*Highway Projects * * ***

A. For construction of a road on a new location over one mile in length that will function as a collector roadway * * *

B. For construction of additional travel lanes on an existing road for a length of one or more miles * * *

Minn.Rule 4410.4300, subp. 22 (1985).

*Wetland and protected waters * * ***

A. For projects that will change or diminish the course, current, or cross-sec-

tion of one acre or more of any protected water or protected wetland * * *.

Minn.Rule 4410.4300, subp. 27 (1985).

The Meeker County Engineer testified that the entire length of the proposed reconstruction was less than one mile. Furthermore, a letter from the DNR indicated that only .8 acres would be disturbed by the work. The reconstruction of MCSAH #9 does not, under these criteria, require an EAW to be done.

The Minnesota Rules also provide exceptions where an EAW is not necessary:

A. Highway safety improvement projects are exempt.

\* \* \*

C. Modernization of an existing roadway or bridge by resurfacing, restoration or rehabilitation that may involve the acquisition of minimal amounts of right-of-way is exempt.

Minn.Rule 4410.4600, subp. 14 (1985).

■ Under Minn.Rule 4410.2100, subp. 2 (1985), an EAW shall provide the basis for an Environmental Impact Statement (EIS). This requirement indicates that when an EAW is not mandated, an EIS is likewise unnecessary. In ordering the study, therefore, the judge went beyond the legal requirements to ensure that the least impact would result to the environment from the construction. The results of the study were set forth in a letter from Mr. Balcom as follows:

a) no ecologically significant features were found along the right-of-way.

b) alternative #1, as proposed by the County, has the least environmental impact of the three alternatives under consideration.

Appellants rely on *County of Freeborn v. Bryson*, 297 Minn. 218, 210 N.W.2d 290 (1973), to support their contention that the County should be prevented from its proposed construction. There are several distinguishing facts, however, from the instant case which are noteworthy. *Freeborn* involved an area of wetland that had been maintained by its owners as a wildlife sanctuary. The owners planted fir trees as shelter for wild animals. In addition to this, the proposed reconstruction would have destroyed an open water pond which was of major significance to the overall sanctuary area. *Id.*, 210 N.W.2d at 293. Finally, expert testimony at trial confirmed the uniqueness of the marshland area.

The trial court used a five-step analysis to determine whether injunctive relief should issue:

1) The relationship between the parties;

2) The harm to be suffered by the plaintiff;

3) The likelihood of plaintiffs prevailing on the merits;

4) Public safety considerations; and

5) The administrative burden which will be created by the injunction.

*See Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965).

■ Considering that the County was acting out of concern for highway safety, coupled with the encouraging results of the environmental study, the conclusion reached by the trial judge in applying the above analysis was well within his discretion. The concern for public safety must be given great consideration in balancing the inconvenience to be suffered by the plaintiffs versus the potential risk of accident if the stretch of road were not improved and repaired.

■ Appellants allege the County did not keep them informed of its intentions for the reconstruction of MCSAH #9, thereby violating their constitutional rights and the Federal Civil Rights Act. The facts illustrate that the County made every effort to negotiate with and inform the landowners. The meeting held by the County Commissioners was a regularly scheduled meeting, and nothing appears to suggest that the local custom of notifying the public was different from that followed in this case. Therefore, appellants' claim that their constitutionally protected right of due process has been violated seems without merit. The only applicable constitutional right the landowner has remaining

is the right to just compensation. The trial court has not abused its discretion in refusing plaintiff's injunction and, in fact, did more than required by law to ensure that the property rights of the landowners were not violated.

## DECISION

The trial court did not err in denying appellants' motion for a temporary injunction under the Minnesota Environmental Rights Act and/or the Federal Civil Rights Act.

**Affirmed.**