Robert KRMPOTICH, et al., Denise
Dahlgren, et al., Respondents,

v.

The CITY OF DULUTH, Petitioner,
Watson Centers, Inc., Intervenor,
Petitioner, Appellants.

Nos. C5–90–2036, C7–90–2037
and C8–90–2354.

Supreme Court of Minnesota.

April 10, 1992.

Bruce D. Malkerson, Popham, Haik,
Schnobrich & Kaufman, Ltd., Minneapolis,
and A. Blake MacDonald, MacDonald, Munger, Downs & Munger, Duluth, for Watson
Centers, Inc.

William P. Dinan, Duluth City Atty., Duluth, for City of Duluth.

Harold A. Frederick, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, for
Robert Krmpotich, et al.

Daniel H. Mundt, Mundt & Associates,
Duluth, for Denise Dahlgren, et al.

## OPINION

SIMONETT, Justice.

The issue in this case is whether the
court of appeals exceeded the scope of its
appellate authority in reversing the trial
court's declaration that the Watson Development project did not violate the Minnesota Environmental Rights Act. We reverse.

The factual and procedural history is detailed in the decision of the court of appeals. *Krmpotich v. City of Duluth*, 474
N.W.2d 392 (Minn.App.1991). Briefly,
Watson Centers purchased an option to buy
approximately 35 acres of property located
in the Miller Hill area of Duluth, intending
to create a 267,000 square foot strip retail
mall and parking lot on the parcel. It
applied to the Duluth City Council for a
rezoning of a portion of the property from
its present residential to commercial classification. The city council ultimately enacted two rezoning ordinances, the latter of
which accomplished the commercial rezoning. The Krmpotich group (a citizen
group) sued the city, focusing primarily on
the substantive and procedural action of

the city council.[1] A second citizen group, the Dahlgren group, brought a declaratory judgment action, arguing that the project, if completed in accordance with the council's actions, would violate the Minnesota Environmental Rights Act. Minn.Stat. ch. 116B (1988). This latter issue is the subject of our narrow review.

The trial court decided that the proposed development did not violate MERA. Following the standard set out in *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762 (Minn.1977), it first reasoned that the alleged natural resources were not natural resources within the meaning of Minn.Stat. § 116B.02, subd. 4. It based this conclusion on the following facts: the wetlands had been substantially degraded by the activities since 1952 of a cement company on the site, plus the oil and other runoff from nearby roads; Coffee Creek was not a naturally flowing creek; rather, water collected in a ditch and exited the property by a culvert, and the so-called creek existed on the property only because of ditch construction upstream; the trembling aspen on the property were not unique and were easily replaceable; and the rock outcroppings had already been cut away to some extent for the gravity feed and loading of the cement trucks on the property. Thus, the trial court concluded that the development would not materially and adversely affect a protectable natural resource either on or off the site, and that there was no feasible and prudent alternative. The court then balanced the utility of the development against potential environmental damage, determining that the development would actually enhance the environment in many respects through use of mitigation ponds, clean-up of existing waste, and decrease in air and other pollution; further, the development would serve the public interest by creating jobs and increasing property values and regional competition.

The court of appeals reversed the trial court. *Krmpotich*, 474 N.W.2d at 398–401. It found that the trial court clearly erred in concluding that the wetlands, creek and other alleged resources were not natural resources and that the development would have no consequential effect on these resources. It labelled the trial court's balancing of environmental damage against the utility of the proposed improvements to be "dubious," reasoning that the property, if left in its present condition, could eventually recover to a pristine state, but not if converted into a strip mall. Finally, it held that the trial court erred in finding that the developer met its burden of proof in showing a lack of reasonable alternatives under Minn.Stat. § 116B.04.

This state has demonstrated an acute awareness of the need for identification and preservation of our natural resources, including wetlands. *See generally* Minn.Stat. § 103A.202 (1990); Minn.Stat. § 116B.09, subd. 2 (1990); *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762 (Minn. 1977); *County of Freeborn v. Bryson*, 297 Minn. 218, 210 N.W.2d 290 (1973). However, the clearly erroneous standard governs the appellate court in reviewing a trial court's findings of fact in a MERA case, that is, findings of fact may be set aside only if, upon review of the evidence as a whole, the appellate court is left with the definite and firm conviction that a mistake has been made. *Minnesota Public Interest Research Group*, 257 N.W.2d at 782–83.

The trial court in considering an Environmental Rights Act claim must, of course, follow the steps outlined in *County of Freeborn v. Bryson*, 297 Minn. 218, 210 N.W.2d 290 (1973), and *People for Environmental Enlightenment and Responsibility v. Minnesota Environmental Quality Council*, 266 N.W.2d 858 (Minn.1978). Here the trial court's detailed findings of fact on the longstanding degraded condi-

---

**1.** The court of appeals affirmed that portion of the trial court's decision determining that the City of Duluth's actions in passing ordinances to rezone the subject property and the accompanying resolutions were within its authority and complied with the procedural requirements of the Duluth City Code. · *Krmpotich*, 474 N.W.2d at 396–98. That portion of the decision that the court of appeals designated as Krmpotich II is not before us.

tion of the 1.85–acre wetland are amply sustainable and are not clearly erroneous; but plaintiffs quite properly take exception to the trial court's conclusion that the wetland was not a natural resource within the meaning of the Environmental Rights Act. We cannot agree with the trial court's conclusion in this regard. The trial court did, however, proceed to conduct the analysis appropriate to consideration of a protected natural resource by considering defendants' affirmative defense, making findings on the suitability of the proposed project to the site, and concluding that defendants had established there was no feasible and prudent alternative. The trial court then determined that the proposed project was consistent with and reasonably required for the promotion of public health, safety and welfare "in light of the State's paramount concern for the protection of its air, water, land and other natural resources * * *." At this last step, where the trial court weighs the equities in a balancing test "analogous to the one traditionally employed by courts of equity," *White Bear Rod & Gun Club*, 257 N.W.2d at 782, the appropriate standard of review is the abuse of discretion standard. On this record, we cannot say that the trial court abused its discretion.

Consequently, we reverse the court of appeals' conclusion that the trial court erred in holding that the proposed development would not violate the Minnesota Environmental Rights Act.

Reversed.