LILLEHAUG, Justice
(concurring in part, dissenting in'part).
In this case, the district court decided whether a subrogation claim based on equity was, indeed, equitable and should be maintained. In so deciding, the district court applied the undisputed facts to, weighed, and balanced the equitable factors identified in the controlling case of RAM Mutual Insurance Co. v. Rohde, 820 N.W.2d 1, 14-16 (Minn.2012). The district court’s decision that subrogation would not be equitable was a garden — variety exercise of sound judicial discretion. But, today, the majority subjects that discretionary, equitable decision to de novo review and arrives at a different conclusion. This unwarranted departure from our prece dent is unsound. Therefore, I respectfully dissent in part.
I.
This case is about a subrogation claim. A fire in a three-story, 36-unit, building within the Melrose Gates apartment complex started on the balcony of apartment 311, the home of Chor Mbua and Maisse Xiong (Tenants). The fire damaged both their apartment and, to a lesser extent, *827 other property of Melrose Gates, LLC (Landlord).
Landlord’s loss, including the damage to apartment'311, was covered by a $19 million insurance policy issued by State Farm Fire and Casualty Company (State Farm). State Farm paid Landlord $470,000 for the damage and then, stepping into the shoes of Landlord, sued Tenants seeking'reimbursement for the full amount paid. Tenants had $300,000 of renters insurance, leaving them personally exposed in the amount of at least $170,000.[1]
Both parties agreed that’ the' equitable framework' for deciding whether State Farm could maintain a subrogation claim against Tenants was established by our court in RAM, 820 N.W.2d at 14-16. RAM eschewed a black-letter rule in landlord-tenant subrogation cases, instead announcing an equitable, case-by-case determination based on whether the landlord and tenant “reasonably anticipated” that the tenant would be liable for tenant-caused property damage. Id. at 16. RAM identified several factors (RAM factors) for a court of equity to weigh and balance: the lease itself, the types of insurance each party purchased, ánd principles of equity and good conscience. Id. at 14-16.
In the district court, the parties filed cross motions for summary judgment regarding whether the Landlord and Tenants reasonably anticipated that Tenante would'be liable for tenant-caused property loss and damage. The district court granted Tenants’ motion for 'summary judgment and dismissed Landlord’s complaint with prejudice.' Applying the RAM factors, the court determined that the parties did not reasonably, expect Tenants would be liable for these losses. Id. The district court determined that the lease did not allocate the risk of loss caused by fire and that it merely “recommend [ed ]” that Tenants buy renters insurance. The court noted the disparity between Landlord’s $19 million insurance policy and Tenants’ $300,000 insurance policy, which covered Tenants’ personal liability both on and off the premises. Regarding the principles of equity and good conscience, the district court considered the fact that Tenants, who rented only one unit of a multi-unit structure, likely could not have purchased an insurance policy intended to cover fire damage to the' complex. The court also considered that when the parties entered into the lease, United Fire & Casualty Co. v. Bruggeman, 505 N.W.2d 87 (Minn.App.1993), rev. denied (Minn. Oct. 19, 1993), which barred subrogation actions in the landlord-tenant context because tenants were considered co-insureds on the landlord’s policy, was still good law. Weighing and balancing the RAM factors, the district court concluded that it would not be equitable to allow Landlord’s insurer, through Landlord, to maintain a subrogation claim. '
Applying a de novo standard of review, the court of appeals reversed and remanded. Melrose Gates, LLC v. Moua, No. A14-1131, 2015 WL 1608845 (Minn.Ct.App. Apr. 13, 2015). The court concluded that the lease was “unambiguous and put[ ] the tenant[s] on notice that [Landlord] would seek reimbursement for any damage resulting from the' tenants’] negligence.” Further, the $300,000 personal liability policy that Tenants carried supported the conclusion, that the parties reasonably anticipated that Tenants would be liable on a subrogation claim, even though Tenants’ *828 coverage was significantly less than Landlord’s. The court of appeals did not address whether “principles of equity and good conscience” weighed against permitting the subrogation claim, or the fact that when the parties entered into.the lease no subrogation claim was cognizable under then-controlling precedent. Instead, the court .concluded that -the parties’ reasonable expectations . could be determined from the plain language of the lease.
[[Image here]]
Subrogation is based on the principle "that no one should be enriched by another’s loss,” Medica, Inc. v. Atl. Mut. Ins. Co., 566 N.W.2d 74, 77 (Minn.1997) (quoting 6A John A. Appleman, Insurance Law & Practice, § 4054 at 143 (1972)). Subro-gation “placets] the charge where it ought to. rest, by compelling the payment of the debt by him who ought in equity to pay it,” Westendorf ex rel. Westendorf v, Stasson, 330 N.W.2d 699, 703 (Minn.1983) (quoting N. Trust Co. v. Consol. Elevator Co., 142 Minn. 132, 138, 171 N.W. 265, 268 (1919)). In this case the district court’s task was to make an equitable determination on whether to allow subrogation.
Had the district court been making a purely legal determination based on undisputed facts, our review would be de novo. We “review legal decisions on summary judgment under a de novo standard,” SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp., 795 N.W.2d 855, 861 (Minn.2011), and “view the evidence in the light most favorable to the party against whom judgment was granted,” Fa-bio v. Bellomo, 504 N.W.2d 758, 761 (Minn.1993). But, here the district court s decision based on a weighing and balancing of the RAM factors was not purely legal — it was equitable. Our standard of review of equitable decisions is well-established; it is for an abuse of discretion. “We review a district court’s decision to award equitable relief ... for abuse of discretion.” Dakota Cty. HRA v. Blackwell, 602 N.W.2d 243, 244 (Minn.1999); see also Minn. Laborers Health & Welfare Fund v. Granite Re, Inc., 844 N.W.2d 509, 513 (Minn.2014) (noting that fraudulent concealment is an equitable doctrine and, typically, a district court’s decision as to whether to grant equitable relief is reviewed for an abuse of discretion); City of North Oaks v. Sarpal, 797 N.W.2d 18, 23 (Minn.2011) (regarding equitable estoppel, “we review equitable determinations for abuse of discretion”); Krmpotich v. City of Duluth, 483 N.W.2d 55, 57 (Minn.1992) (“[Wjhere the - trial court weighs the equities in a balancing test ... the appropriate standard of review is the abuse of discretion standard”); Flynn v. Sawyer, 272 N.W.2d 904, 910 (Minn.1978) (holding that “[s]pecific performance is an equitable remedy addressed to the sound discretion of the trial court”); AMF Pinspotters, Inc. v. Harkins Bowling, Inc., 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961) (reviewing a district court’s grant of a temporary injunction under the abuse of discretion standard); Brown v. Lee, 859 N,W.2d. 836, 839 (Minn.App.2015), rev. denied (Minn. May 19, 2015) (“Because contribution is an equitable remedy, a more deferential standard of review than de novo may be applicable....”).[2]
*829 In the same fashion, whether to allow a subrogation claim is an equitable decision that should be reviewed for an abuse of discretion. Because “[t]he doctrine of sub-rogation is of purely equitable origin and nature,” N. Trust Co., 3,42 Minn, at 138, 171 N.W. at 268, the. abuse -of discretion standard is appropriate. For example, we applied this standard in Citizens State Bank v. Raven Trading Partners, Inc., relative to the equitable subrogation of mortgages: “Where the material facts are not disputed, we review the district court’s application of the law de novo. [H]ow-ever ... ‘[granting equitable relief is within the sound discretion of the trial court [and] [o]nly. a clear abuse of that discretion will result in reversal.’ ” 786 N.W.2d 274, 277 (Minn.2010) (alteration in original) (quoting Nadeau v. Cty. of Ramsey, 277 N.W.2d 520, 524 (Minn.1979)).
The distinction between a legal decision on undisputed facts and an equitable decir sion on undisputed facts was drawn in Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826 (Minn.2012). We noted that, “when the relevant facts are undisputed the standard of review is de novo, but a more deferential abuse of discretion standard of review might be applicable where the district court, after balancing the equities, determines not to award equitable relief.” Id. at 838 (citing SCI Minn. Funeral Servs., 795 N.W.2d at 860; Citizens State Bank, 786 N.W.2d at 277 n. 2). Although we did not resolve the standard of review in Caldas, the distinction between a legal determination on summary judgment and an equitable determination on summary judgment is a logical one consistent with our precedent.
Indeed, in the very opinion that established the case-by-case analytical framework we apply here, we indicated that a deferential standard of review “may be applicable ‘where, after balancing the equities, the district court determines not to award equitable relief.’ ” RAM, 820 N.W.2d at 6 n. 3 (quoting SCI Minn. Funeral Servs., 795 N.W.2d at 860-61). RAM outlined the -factors for the district court to consider when determining whether a subrogation claim may be- maintained, including the lease itself, other admissible evidence, and principles of equity and good conscience. Id. at 14-16. In RAM, the district court’s grant of a commercial tenant’s motion for' summary judgment was reviewed de novo only because the more deferential standard of review was “not applicable ... where the district court determined as a matter of law that [the plaintiff] could not maintain a = subrogation action.” Id. at 6 n. 3.
It only makes sense that an abuse of discretion standard applies when the district court weighs and balances the RAM factors, even on uncontested facts. As we said in RAM, “the case-by-case approach [to landlord-tenant subrogation] best effectuates the intent of the contracting parties while still taking into account the equitable principles underlying subrogation actions.” Id. at 12 (emphasis added). In RAM, we encouraged the use of “basic principles of equity, which by definition require a court to weigh and balance the equities between the parties in determining whether subrogation is available in a particular ease.” Id. at 13. If the district court’s role is to apply “principles of equity and good conscience,” and then “weigh and balance” the RAM factors, that signifies considerable discretion — just as the district court has considerable discretion to weigh and balancé the factors in any other equitable proceeding, whether for injunc-tive relief or otherwise.
*830 The court asserts that, in this case, the district court did not weigh or balance the RAM factors. That is incorrect. To the contrary, the district court expressly referenced RAM's direction to perform a case-by-case balancing of factors, saying, “Courts must also balance ‘the principles of equity and good conscience’ when determining. whether to permit a subrogation claim.” The district court did consider, weigh, and balance the RAM factors.
Therefore, the district court’s equitable determination not to allow subrogation should be reviewed for- an abuse of discretion. I see no such abuse here.
III.
The district court considered the following factors when it granted Tenants’ summary judgment motion: 1) the terms of the lease; 2) the amount of insurance coverage each party carried; 3) the nature of the premises; and 4) the controlling Minnesota law at the time of the lease.
Correctly, the district court first considered the lease itself. See RAlM, 820 N.W.2d at 14. It understood that, under RAM, “provisions of a lease should never be interpreted in isolation, but rather in the context of the entire agreement.” Id. (quoting Hydra-Mac, Inc. v. Oman Corp., 450 N.W.2d 913, 916 (Minn.1990)).
Paragraph 27 in this lease states that “[Tenants] shall reimburse [landlord] for: l)[a]ny loss, property damage, or cost of repair or service ... caused by negligence or improper use by [Tenants]..,” Paragraph 11 provides Tenants’ promise “1) not to damage ... the Apartment ... [and] 6) that when [Tenants] move[ ] out, the Apartment will be left in good condition, except for ordinary wear and tear.” (Emphasis omitted.) The lease also reflects that each party will be responsible for damage caused by its actions. “[Landlord]- is not responsible for any damage or injury that is done to [Tenants] or his/her property, guests or their property that was not caused by [Landlord].” Finally, although the lease does not require Tenants to purchase insurance, it does “recommend[]” that Tenants obtain renters insurance.[3]
In this case, the district court noted that, although the lease “generally” states that Tenants may not damage the apartment and are responsible for losses they cause, the Lease does not allocate the risk of loss such as that caused by fire. The district court further noted that the lease merely recommended that Tenants purchase insurance. It concluded: “[t]akenas whole, the provisions of the Lease do not show that the parties intended or reasonably expected that [Tenants] would be liable for these ■ losses.” Thus the district court, in its equitable analysis, properly identified the relevant provisions in the lease and considered them as a whole. This is what we required in RAM.
Next, also as required by RAM, the district court properly considered “the types of insurance purchásed by each party as' evidence of each party’s expectations with respect to its responsibility for a particular loss.” Here, the lease did not require Tenants to purchase any specific in *831 surance, much less fire coverage. True, Tenants had purchased $800,000 of liability insurance. But Landlord had insurance coverage of over $19 million, which specifically included fire damage. Given the disparity in the amount of insurance the parties carried, the district court came to a reasonable conclusion: “[t]he types of insurance purchased by the parties do not support the conclusion that.the. parties reasonably expected that [Tenants] would be held responsible for these losses.” .This analysis is what we required in RAM.
Third, once again as required by RAM, the district court considered the nature of ■the premises. As we said in RAM, “the fact that the leased premises are part of a large multi-unit structure may be relevant to the equities and the parties’ reasonable expectations regarding responsibility.” 820 N.W.2d at 16. “[I]n the absence of a ‘very clear contractual obligation to the contrary,’ the'tenant likely is riot ‘thinking beyond the leased premises’ and may not ‘as a practical matter ... be able to afford, or possibly even obtain, sufficient liability insurance to protect against such an extended loss.’” Id. The district court reasonably concluded that this factor cut in favor of the Tenants.
Finally, as part of its equitable analysis, and because parties’ expectations are shaped by existing law, the district court considered the state of the law at the time that the parties entered' into the lease and at the time of the fire. At those times, Bruggemán, which barred landlord subro-gation claims as a matter of law, was controlling precedent.[4] The district court fairly considered that, when they entered the lease, the parties could not have reasonably expected Tenants would be liable in subrogation.
Once it identified and considered the equitable factors, the district court weighed and balanced them. After doing so, it came to the conclusion that it would not be equitable to allow State Farm to maintain a subrogation claim through Landlord against Tenants. This was hardly an abuse of discretion.
The opinion of the court does well in limiting this subrogation claim to the damage to Tenants’ apartment itself. Certainly this result, in which I concur, is better than that reachéd by the court of appeals, which devoted little attention to principles 'of equity. Still, by reversing the district court in part, the court 'undermines an important principle stated iri RAM: “The district court is • in the besf'" position to ‘balance the equities of the case and determine whether the equitable remedy ... is appropriate.’ ” 820 N.W.2d at 14 (quoting Dakota Cty. HRA v. Blackwell, 602 N.W.2d 243, 244 (Minn.1999)).
Here, the district court .did exactly what RAM — and equity — required. Therefore, I respectfully dissent in part.

. Federal courts appear to agree. See, e.g., Kansas City S. Transp. Co. v. Teamsters Local Union No. 41, 126 F.3d 1059, 1063 (8th Cir. 1997) (review of an order granting a preliminary injunction is "for an abuse of discretion, clear legal error, and clearly erroneous fact findings”) (quoting Hill v. Xyquad, Inc., 939 F,2d 627, 630 (8th Cir.1991)). See also Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 546 (4th Cir.2007) ("Any relief granted in equity is at the discretion of the district court”); Grossbaum v. Indianapolis-Marion Cty. Bldg. Auth., 100 F,3d 1287, 1292 (7th Cir. 1996) ("We review a trial court’s *829 discretionary balancing of factors under an abuse of discretion standard."). '

. The lease in RAM was considerably different. There .was a specific ‘‘Insurance" heading that clearly provided that "Tenant is responsible for insuring the Premises for liability insurance for the benefit of the Tenant and the Landlord” and that "Tenant will provide proof of such insurance to the Landlord upon the issuance or renewal of such insurance.” 820 N,W.2d at 8. The lease also explicitly stated, "The Tenant is hereby advised and understands that the • personal property of the Tenant is not insured by the Landlord for either damage or loss, and the Landlord assumes no liability for any such loss.” Id.

. This equitable issue was not discussed in RAM, but RAM’s reference to principles of equity and good conscience would seem to allow it to be considered. . • ■