Mary Annette WESTENDORF by her Conservator, David J. WESTENDORF, and David J. Westendorf, Appellants,

v.

Kevin Michael STASSON and Richard James Stasson, Respondents.

Group Health, Inc., Respondent.

No. CX–82–530.

Supreme Court of Minnesota.

March 4, 1983.

Briggs & Morgan, John R. Kenefick, St. Paul, for appellants.

Lasley, Gaughan, Reid, Stich & Angell, Minneapolis, for respondents Stasson.

Hansen, Dordell, Bradt & Odlaug, J. Mark Catron and John H. Guthmann, St. Paul, for respondent Group Health, Inc.

SIMONETT, Justice.

After paying the medical expenses of its enrolled member injured in an auto accident, is a Health Maintenance Organization (HMO) entitled to reimbursement for those expenses out of the member's tort recovery when the total recovery from all sources has not fully compensated the injured party? We conclude that while the reimbursement clause in question applies to the settlement proceeds, the HMO nonetheless is not entitled to reimbursement in the absence of full recovery. Accordingly, we reverse.

Plaintiff-appellant Mary Annette Westendorf sustained quadraplegic injuries in an auto accident on June 3, 1978. She and her husband David, David also acting as his wife's guardian ad litem and conservator of her estate, sued defendants Kevin and Richard Stasson, driver and owner of the other car involved in the accident, and settled for $100,000, the policy limits on the Stasson car. Mr. and Mrs. Westendorf were enrolled as members of respondent Group Health, Inc., a health maintenance organization, organized and operating under Minn.Stat. ch. 62D (1982). Group Health, Inc., has paid medical and hospital expenses for Mrs. Westendorf's care in the amount of $22,145.01.

In settling with the third-party tortfeasor for $100,000, plaintiffs executed a covenant not to sue in which plaintiffs released the Stassons "from any and all claims." After stating that plaintiff's damages greatly exceeded the $100,000 payment, the parties to the release agreed further:

> The payments to be made hereunder are solely attributable to the pain and suffering and permanent injury suffered by plaintiff Mary Annette Westendorf, to the loss of support and consortium suffered by plaintiff David J. Westendorf, and to other items of non-economic loss. None of the settlement proceeds hereto are attributable to medical expenses paid by either or both of the plaintiffs on account of the injuries sustained by plaintiff Mary Annette Westendorf.

David Westendorf, as guardian, then petitioned the district court for a distribution of the $100,000 settlement proceeds, at which time Group Health asserted a right to be reimbursed, relying on a clause in the membership agreement which reads:

> In the event an Enrollee is entitled to payment for care rendered on account of Illness or Injury * * * (1) arising out of and in the course of employment, (2) arising from the act or omission of a third person, or (3) arising from an accident covered by "No-Fault" automobile insurance, the Plan is entitled to reimbursement for the reasonable value of the care and services furnished to the extent of compensation benefits or damages recoverable.

The trial court ruled that this clause clearly gives Group Health a right of reimbursement and that Group Health is entitled to reimbursement out of the settlement recovery notwithstanding that Mr. and Mrs. Westendorf have not been fully compensated for their injuries. Mr. and Mrs. Westendorf appeal.

1. The first issue is whether Group Health's reimbursement clause purports to apply to the settlement proceeds of $100,000. Plaintiff-appellants claim that the clause is not applicable both because of the wording of the clause and the wording of the settlement agreement. We disagree.

The reimbursement clause is not entirely clear. It might be construed to mean that Group Health is entitled to reimbursement only where the enrollee recovers a payment specifically for medical expenses, or it might be construed reimbursement applies whenever the enrollee is entitled to recover payment for medical expenses. Here, of course, Mr. and Mrs. Westendorf were entitled to recover their medical expenses from the tortfeasor. We think this ambiguity is resolved by reference to the Minnesota De-

partment of Health regulation which governs the type of subrogation clause permissible in an HMO contract. The regulation provides that the HMO may require reimbursement from the enrollee "to the extent the enrollee *collects* damages or workman's compensation benefits for the diagnosis, care, and treatment of her injury." *See* 7 MCAR § 1.369 C.4 (1982) (emphasis added). So, construing the Group Health reimbursement clause in light of the health department regulation, it is clear, and we so hold, that Group Health's right of reimbursement for medical expenses applies by its terms only to payments specifically collected by the enrollee for those medical expenses.

■ This brings us to the second part of appellants' argument. If the reimbursement clause applies only to a payment collected for medical expense, then, argue appellants, the clause does not apply to their settlement recovery because no part of that recovery was for medical expense. We do not agree with this contention.

If the Westendorfs' claim had gone to a jury trial, then limiting Group Health's right of reimbursement to the member's recovery for medical expense would be reasonable and straightforward. Plaintiffs in that instance would have had to assert and protect the health provider's interest. *Hayward v. State Farm Mutual Automobile Insurance Co.,* 212 Minn. 500, 4 N.W.2d 316 (1942). A special verdict form might have been used so that the jury could make a separate allocation for medical expense. *See Dockendorf v. Lakie,* 240 Minn. 441, 61 N.W.2d 752 (1953). Such an allocation would have been binding on Group Health, which as a result would have been entitled to reimbursement, only "to the extent of" that allocation, for the reasonable value of the care and services furnished.

When, however, plaintiffs' claim is settled without a verdict, the application of the reimbursement provision is more problematic. In such a case, any allocation is left to the bargaining of the parties to the tort action, and it is not surprising if the parties give little solicitude to the reimbursement rights of the health care provider. The enrollee, even though entitled to recover medical expenses from a third party, may elect not to do so. Here, Mr. and Mrs. Westendorf were entitled to recover medical expenses against Kevin and Richard Stasson. They did in fact recover $100,000. They could have allocated $22,000 of that amount to medical expense; or they could have made no allocation at all; or they could, as they did, allocate the entire amount to items of damage other than medical expense. Because the parties to the settlement agreement have characterized their settlement as excluding any damages for medical expenses, it does not follow, however, that this characterization is binding on the HMO provider. The effect of the HMO's reimbursement clause should not depend on a settlement bargain to which it was not privy. The settlement agreement should not be determinative of how the proceeds are allocated.

Since the allocation of the settlement proceeds here is neither binding nor determinative, we will disregard the allocation in implementing Group Health's reimbursement clause. We also think that it is more appropriate to view a settlement for less than full compensation of plaintiffs' injuries as an undifferentiated recovery than to make a perhaps fruitless attempt to allocate the settlement proceeds in some other fashion. We conclude, therefore, that Group Health's reimbursement clause is by its terms applicable to the settlement proceeds.

2. Our inquiry does not, however, end here. Given that the parties do not dispute that Mrs. Westendorf's recovery from all sources is insufficient to compensate her fully, a question remains as to which party is to have priority to the proceeds. Appellants argue that settled principles of insurance law regarding subrogation govern and that, therefore, reimbursement will not lie.

In this case, Group Health drafted its clause in terms of "reimbursement" rather than "subrogation." Although this means that Group Health cannot "stand in the shoes" of its members, in all other respects this clause serves as a subrogation clause and, therefore, we will apply the same principles which govern subrogation.

■ Although subrogation can arise based on the equities of the situation alone, we are dealing here with "conventional subrogation" which is the product of an agreement between the parties. *See* 16 *Couch on Insurance* 2d § 61.2 (1966). However, subrogation remains an offspring of equity. Thus, even when the right to subrogation arises by virtue of an agreement, the terms of the subrogation will nonetheless be governed by equitable principles, unless the agreement clearly and explicitly provides to the contrary. In one of our early cases, involving suretyship rather than insurance, we stated:

> The doctrine of subrogation is of purely equitable origin and nature. Whether a case for its application arises in favor of a surety as against third persons depends upon the balance of equities between them and the surety. It does not arise where the result would be prejudicial to innocent purchasers. The object of subrogation is to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it. It will never be enforced when the equities are equal or the rights not clear. The right may be modified or extinguished by contract.

*Northern Trust Co. v. Consolidated Elevator Co.*, 142 Minn. 132, 138, 171 N.W. 265, 268 (1919). We subsequently observed in dictum that "[t]he rights as between the insured and the insurer * * * are usually determined by the provisions of the policy. If it is silent in this respect, the rules of equitable subrogation are controlling."

*Flor v. Buck*, 189 Minn. 131, 133, 248 N.W. 743, 744 (1933). *See also Great Northern Oil Co. v. St. Paul Fire & Marine Insurance Co.*, 291 Minn. 97, 99, 189 N.W.2d 404, 406 (1971). Other jurisdictions join us in recognizing that equitable principles apply to all instances of subrogation except when modified by specific provisions in the contract. *See Lyon v. Hartford Accident and Indemnity Co.*, 25 Utah 2d 311, 318, 480 P.2d 739, 744 (1971); *Providence Washington Insurance Co. v. Hogges*, 67 N.J.Super. 475, 481, 171 A.2d 120, 124 (1961).

■ Given its origins in equity and its restitutionary purpose of preventing unjust enrichment, the general rule is that subrogation, whether arising from equity or contract, will be denied prior to full recovery. That is, absent express contract terms to the contrary, subrogation will not be allowed where the insured's total recovery is less than the insured's actual loss. *See* 16 *Couch on Insurance* 2d § 61.61 (1966); *see also* 3 Appleman, *Insurance Law and Practice* § 1675 (1967); Patterson, *Essentials of Insurance Law* § 33 (1957). The substantial majority of contemporary cases recognize and apply this general rule.[1] We expressly refuse to follow those cases which suggest that a subrogation clause ipso facto authorizes first priority recovery by the insurer.[2]

■ If the full recovery rule is applicable, it controls our disposition of this case. There is no question that Mrs. Westendorf has not been fully compensated for her injuries.[3] The membership agreement

---

1. *See, e.g., Hardware Dealers Mutual Fire Insurance Co. v. Ross*, 129 Ill.App.2d 217, 262 N.E.2d 618 (1970); *Washtenaw Mutual Fire Insurance Co. v. Budd*, 208 Mich. 483, 175 N.W. 231 (1919); *Wimberly v. American Casualty Co.*, 584 S.W.2d 200 (Tenn.1979); *Garrity v. Rural Mutual Insurance Co.*, 77 Wis.2d 537, 253 N.W.2d 512 (1977).

2. *See Barmeier v. Oregon Physicians' Service*, 194 Or. 659, 243 P.2d 1053 (1952); *Peterson v. Ohio Farmers Insurance Co.*, 175 Ohio St. 34, 191 N.E.2d 157 (1963); *Shifrin v. McGuire & Hester Construction Co.*, 239 Cal.App.2d 420, 48 Cal.Rptr. 799 (1966).
   Neither do we think *Milbank Mutual Insurance Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974), and *Pfeffer v. State Automobile & Casualty Underwriters Insurance Co.*, 292 N.W.2d 743 (Minn.1980), cited by appellants, are helpful here. In both of these cases we held that an auto insurer's subrogation interest was subordinate to the legislative policy of the no-fault act to provide for full compensation of injured persons. We do not think this legislative policy in the no-fault area should be equated to a private health care provider's reimbursement clause.

3. At least not yet. In their briefs, plaintiff-appellants state that other litigation is pending against their own auto liability insurer.

makes no attempt to supersede the general rules of equity by stating that Group Health is to be reimbursed even if its member recovers less than full compensation.

■ Group Health argues, however, that the general rule that subrogation will not lie in the absence of full recovery is not applicable here because of its status as a health maintenance organization. In particular, it argues that since the legislature has exempted it from certain insurance regulatory requirements, since it is a provider of health care and not an indemnitor, and since it is a nonprofit organization seeking to provide low cost health care, its right to reimbursement should be recognized despite the absence of a full recovery by the injured plaintiff.

In some respects, it is true that an HMO is unique and is so recognized by the legislature. An HMO is a comprehensive health care system which provides, either directly or through arrangements with others, health services to members in return for fixed prepaid per capita payments. *See* Minn.Stat. § 62D.02, subd. 4 (1982). It differs, therefore, from the usual health care insurance under which the patient chooses the physician and facilities who are, in turn, reimbursed on a fee-for-service basis. HMOs were developed in response to rising health care costs and lack of access to medical care, the theory being that since "the HMO's [sic] must bear the cost of treating their own members, they are said to have a greater incentive than traditional fee-for-service providers to control the costs of health care." *Baystate Medical Center v. Blue Cross of Massachusetts,* 416 N.E.2d 1352, 1355 (Mass.1981). Our legislature, in enacting the Health Maintenance Act of 1973, stated, in part:

(a) Faced with the continuation of mounting costs of health care coupled with its inaccessibility to large segments of the population, the legislature has determined that there is a need to explore alternative methods for the delivery of health care services, with a view toward achieving greater efficiency and economy in providing these services.

(b) It is, therefore, the policy of the state to eliminate the barriers to the organization, promotion, and expansion of health maintenance organizations; to provide for their regulation by the state commissioner of health; and *to exempt them from the operation of insurance and nonprofit health service plan corporation laws of the state except as hereinafter provided.*

Minn.Stat. § 62D.01, subd. 2 (1982) (emphasis supplied).

■ We do not read this regulatory exemption as an abrogation of the principles used to interpret and apply insurance policies. Since the enrollee has paid for comprehensive health care, it seems to us if the legislature had intended that coverage to be invaded by the HMO's right of reimbursement, a right at variance with the customary principles of subrogation, it would have said so. Nor do we think the fact that the HMO is a nonprofit organization is significant here.

Thus, although the reimbursement clause reaches the settlement proceeds, we hold that reimbursement, whether arising from equity or contract, is precluded prior to full recovery. Consequently, the trial court's decision must be reversed.

Reversed.