**MEDICA, INC., d/b/a Medica Choice, petitioner, Appellant,**

**v.**

**ATLANTIC MUTUAL INSURANCE COMPANY, Respondent.**

**No. C5-95-2489.**

Supreme Court of Minnesota.

June 26, 1997

Rehearing Denied Aug. 5, 1997.

Kevin Hickey, Minneapolis, for appellant.

Timothy Leer, Minneapolis, Usa Marco Kouba, Chicago, IL, for respondent.

Heard, considered, and decided by the court en banc.

OPINION

BLATZ, Justice.

The issue in this case is whether a health maintenance organization (HMO) has either conventional or equitable subrogation rights against an insurer that issued a general liability policy. The district court granted summary judgment for respondent Atlantic Mutual Insurance Company (Atlantic), holding

that appellant Medica, Inc. (Medica) had no subrogation rights against Atlantic's general liability policy for claims Medica paid its member insureds. The court of appeals affirmed the district court. We affirm in part and reverse in part.

The facts are uncontested. Medica initially was the holding company for Physicians Health Plan of Minnesota (PHP) and Share Health Plan (Share). Effective March 31, 1993, PHP and Share merged to form Medica and Medica succeeded to all their rights and obligations.

Three Medica members were injured while on property owned by different churches. Medica paid the following medical expenses on behalf of its members: $4,385.75 incurred on behalf of Elsie Patch under her PHP policy for injuries sustained on February 20, 1992; $2,127.40 incurred on behalf of Lulu Syring under her PHP policy for injuries sustained on February 16, 1992; and $974.81 incurred on behalf of Ronald Randall under his Medica Choice [1] policy for injuries sustained on November 13, 1993.

The churches were insured by Atlantic under policies that provided:

a. We will pay medical expenses as described below for "bodily injury" caused by an accident [on premises owned by the church] * * *.

b. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance.

The churches are not tortfeasors. None of the Medica members received a double recovery.

Medica brought a declaratory judgment action against Atlantic, alleging that Atlantic is legally responsible for the Medica members' medical expenses and that Medica has subrogation rights against Atlantic. Medica asserted subrogation rights under insurance policies that covered the three Medica members: policies issued by PHP [2] covered Patch and Syring and a policy issued by Medica Choice covered Randall. Atlantic denied that it had an obligation to pay Medica for the claims and brought a counterclaim in declaratory judgment. Medica and Atlantic brought cross motions for summary judgment.

The district court granted summary judgment for Atlantic, holding that Medica had no subrogation rights under the terms of its policies or in equity. As the basis for its decision, the district court noted that the churches were not tortfeasors; Atlantic's obligation to pay medical expenses was contractual; the Medica members did not receive a double recovery; and the rights of Medica and Atlantic were equal.

The court of appeals affirmed, holding that Medica had no subrogation rights under either the Medica Choice or PHP policies. *Medica, Inc. v. Atlantic Mut. Ins. Co.,* 550 N.W.2d 635 (Minn.App.1996). The court also held that the doctrine of equitable subrogation was inapplicable because the equities between Medica and Atlantic were equal.

I.

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court reviews the record to determine whether there are any genuine issues of material fact and whether the lower courts erred in their application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Because the parties do not dispute the relevant facts, a *de novo* standard of review is applied to determine whether the district court erred in its application of the law. *Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 910 (Minn.1995).

Subrogation involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor). *Rowe v. St. Paul Ramsey Med. Ctr.,* 472 N.W.2d 640, 644

1. "Medica" refers to Medica, Inc., the appellant in this case, while "Medica Choice policy" refers to an insurance policy issued by Medica to Randall.

2. Although Patch and Syring were covered by separate PHP policies, the policy language at issue in this case was identical in each PHP policy.

(Minn.1991). The insurer stands in the shoes of the insured and acquires all of the rights the insured may have against a third party. *Id.* "Subrogation rests on the maxim that no one should be enriched by another's loss." 6A John A. Appleman, *Insurance Law & Practice* § 4054 at 143 (1972). There are two kinds of subrogation: equitable and conventional. Equitable subrogation is a product of common law and its purpose is "to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it." *Westendorf v. Stasson,* 330 N.W.2d 699, 703 (Minn.1983) (quoting *Northern Trust Co. v. Consolidated Elevator Co.,* 142 Minn. 132, 138, 171 N.W. 265, 268 (1919)).

Conventional subrogation is contractual—it is a product of an agreement between the insured and the insurer. *Id.* Parties may grant greater subrogation rights under contract than would have been recognized in equity. 16 George J. Couch, Couch on Insurance 2d § 61:3 (rev. ed.1983). Because the doctrine of subrogation is equitable in origin, even when the right to subrogation is contractual, the terms of the subrogation will be governed by equitable principles, unless the contract clearly and explicitly provides to the contrary. *Westendorf,* 330 N.W.2d at 703. Whether an insurance policy provides for conventional subrogation depends upon the policy language. *Id.*

The Atlantic policy provides that Atlantic will pay medical expenses for bodily injuries sustained in accidents on the premises of its insured churches, regardless of who is at fault. There is no dispute that the Medica members were accidentally injured on the premises of the insured churches. Medica, which paid its members' medical expenses under the Medica Choice and PHP policies, contends that it has conventional subrogation rights against Atlantic under both the Medica Choice and PHP policies.

First we examine whether Medica has conventional subrogation rights under its Medica Choice policy, which governs Randall's medical expenses. The Medica Choice policy contains an explicit subrogation clause:

Medica Choice's right of recovery:

> If you are injured and receive HMO *benefits* under the Contract, Medica Choice shall have the right to subrogate against any party, individual or other entity who may be legally responsible for your injuries. Medica Choice's right of subrogation shall be governed according to this section.

Interpretation of language in an insurance policy is a question of law and is subject to *de novo* review. *Hammer v. Investors Life Ins. Co. of N. Am.,* 511 N.W.2d 6, 8 (Minn.1994). "The policy must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.,* 383 N.W.2d 645, 652 (Minn.1986). Language in a policy is ambiguous if it is reasonably subject to more than one interpretation. *Hammer,* 511 N.W.2d at 8. If the language is ambiguous, the ambiguity shall be construed against the insurer that drafted the policy. *Id.*

The Medica Choice policy provides for subrogation against "any party, individual or other entity who may be legally responsible for your injuries." The issue is whether this language limits conventional subrogation to claims against tortfeasors. The district court decided that the Medica Choice subrogation clause did not grant a conventional subrogation right against Atlantic because the policy language "legally responsible for your injuries" cannot include a subrogation right against an entity that is not the wrongdoer causing the injury. The court of appeals affirmed, holding that the Medica Choice policy language did not grant Medica the right to conventional subrogation. The court of appeals interpreted the Medica Choice subrogation clause to mean that Medica can subrogate only against "an entity that is legally responsible for all of an injured member's injuries." *Medica,* 550 N.W.2d at 638.

There are several problems with the court of appeals' interpretation. First, the court of appeals ignored language granting Medica subrogation rights against "*any* party, individual or other entity" and decided that the clause applied only to "*an* entity." This narrowed the application of the subrogation clause in that the policy language left open the possibility that Medica may have subro-

gation rights against more than one party, while the court of appeals' interpretation implied that subrogation may only be had against one entity. Second, while the subrogation clause states that it applies to a party, individual, or entity that *may be* legally responsible for injuries, the court of appeals interpreted the clause as applying to an entity that *is* legally responsible. This also narrowed the application of the subrogation clause. Third, the court of appeals decided that, because there is no reason to conclude that the subrogation clause refers to an entity that is responsible for only *some* injuries, it limited subrogation to an entity that is legally responsible for *all* injuries. Finally, although the court of appeals did not explicitly state that Medica Choice's subrogation clause refers only to tortfeasors, clearly that is the effect of its holding.

The court of appeals' interpretation that Medica may only subrogate against "an entity that is legally responsible for all of an injured member's injuries" is not supported by the policy language. The plain language of the policy could be reasonably interpreted to mean that Medica may assert a subrogation right against more than one party, any of whom may be responsible for some of the insured's injuries and any of whom may or may not be a tortfeasor.

Atlantic argues that a party "legally responsible for your injuries" can only mean a tortfeasor. However, if that were the intended result, presumably the clause would have stated that the subrogation right is limited to claims against tortfeasors or other parties who are at fault. The subrogation clause needs to be read in the context of the rest of the Medica Choice policy, which only covers medical expenses. *See Employers Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 282 Minn. 477, 479–80, 165 N.W.2d 554, 556 (1969). When read in the context of Medica's contract, "responsible for your injuries" means a party responsible for payment of medical expenses incurred as a result of those injuries.

Because the resolution of this issue depends upon this court's interpretation of Medica Choice's subrogation clause, cases cited by the parties and the court of appeals are helpful only insofar as they interpret similar language in other subrogation clauses. Most of the cases cited by the parties and the court of appeals involve interpretations of different policy language or interpretations of language taken out of context.[3] Moreover, other cases cited by the court of appeals to demonstrate that the Medica Choice provision does not give Medica a conventional subrogation right against Atlantic are not persuasive even though the courts in those cases had interpreted language similar to that in the Medica Choice provision. These cases are unpersuasive because, although the courts held that the language applied to a tortfeasor, the tortfeasor was the only party the insurance company was attempting to assert the clause against, thus the courts did not address the issue of whether the language could apply to a non-tortfeasor.[4]

3. *Allen v. United States*, 668 F.Supp. 1242, 1247 (W.D.Wis.1987) (interpreting a federal statute that only allowed subrogation when there was tort liability); *Arizona Property & Cas. Ins. Guar. Fund v. Herder*, 156 Ariz. 203, 208–09, 751 P.2d 519, 524 (1988) (interpreting "persons or organizations who may be legally responsible" for bodily injuries in limit-of-liability clause involving "amounts otherwise payable for damages" to include only parties who were responsible for the infliction of the injuries); *Employers Health*, 161 Wis.2d at 945–47, 469 N.W.2d at 175–76 (holding that a clause providing that the insurer "has a right to recover damages from a responsible third party" referred to a tortfeasor because the use of "damages" in bodily injury cases means pecuniary compensation resulting from an unlawful or negligent act by a wrongdoer); *Hamed v. County of Milwaukee*, 108 Wis.2d 257, 264–65, 321 N.W.2d 199, 203–04 (1982) (interpreting "person responsible for such injury or death" in a crime victims statute as referring to the person who caused an injury when the statute was entitled "Recovery from offender" and the statute as a whole referred to awards to victims of crimes).

4. *See, e.g., Michigan Mut. Liab. Co. v. Karsten*, 13 Mich.App. 46, 49–50, 163 N.W.2d 670, 671–72 (1968) (holding, with no analysis, that "any person or organization who may be legally liable therefor" applies to "a person legally liable for injuries caused by an accident * * *" when, under the facts of the case, the only person to whom the clause could have applied was a tortfeasor); *Ballavance v. Safeco Ins. Co.*, 432 N.W.2d 185, 188 (Minn.App.1988), *pet. for rev. denied*, (Minn., Jan. 25, 1989) (noting, in dicta, in a stacking case, that person "who may be legally responsible" referred to tortfeasor when tortfeasor was the only third party involved).

We hold that the Medica Choice policy grants a conventional subrogation right. When Medica drafted the subrogation clause in its Medica Choice policy, it was concerned only with subrogation as to medical benefits. Perhaps the subrogation clause could have been more artfully drafted, but, as written, it grants Medica the right to subrogate against Atlantic.

II.

We next address the PHP policy language that covers Patch and Syring. The PHP policies' "right of recovery" clause governs an insured's medical expenses:

PHP's right of recovery:

1. After PHP provides coverage for *benefits,* PHP has the right to recover any amount which PHP was not responsible for according to this section.
2. PHP may recover from:
   - the person we have paid or for whom we have paid;
   - other Plans; or
   - other organizations.

The question is whether this "right of recovery" clause acts as a subrogation clause. Medica argues that it is entitled to conventional subrogation under this policy language based upon "general principles of law." We do not agree.

The PHP policies do not mention "subrogation." Although this court has held that a clause in an insurance policy that fails to mention "subrogation" may still serve as a subrogation clause in some respects, *Westendorf,* 330 N.W.2d at 702, Medica has not cited any language in the PHP policies that could conceivably function as a subrogation clause.

Principally, Medica argues that the PHP policies' "right of recovery" clause granted conventional subrogation rights because "PHP has the right to recover any amount which PHP was not responsible for according to this section." However, Medica has not alleged that PHP paid medical expenses for which it was not responsible. Further, the fact that the relevant section of the Medica Choice policy is virtually identical to the relevant section of the PHP policies, except that the "right of recovery" clause in the Medica Choice policy contains an explicit subrogation clause, also supports the conclusion that the PHP policies do not contain a subrogation clause. Because the "right of recovery" clause does not mention "subrogation" or "reimbursement" and because it only allows Medica to recover expenses for which it was not responsible, it is not a subrogation clause. We hold that the PHP policies do not give Medica a right to conventional subrogation.

III.

Having determined that Medica does not have a right to conventional subrogation under its PHP policies, we need to determine whether Medica has an equitable subrogation right independent of any contractual obligation.

The district court and the court of appeals agreed that equitable subrogation is inapplicable because the equities between Medica and Atlantic were equal. After reviewing the record, we conclude that equitable subrogation is not appropriate under the facts and circumstances in the instant case.

Affirmed in part, reversed in part.