**Robert SUCHY, et al., Plaintiffs,**

**and**

**Blue Cross and Blue Shield of Minnesota, intervenor, Appellant,**

v.

**ILLINOIS FARMERS INSURANCE COMPANY, Respondent.**

**No. C1–97–1182.**

Court of Appeals of Minnesota.

Feb. 10, 1998.

Robert J. Lange, Lange & Anderson, P.A., Bloomington, for appellant.

R. Stephen Tillitt, Anne T. Johnson, Gislason, Dosland, Hunter & Malecki, P.L.L.P., Minnetonka, for respondent.

Considered and decided by HARTEN, P.J., and HUSPENI and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Following an automobile accident, Robert Suchy received medical insurance benefits from appellant Blue Cross and Blue Shield of Minnesota (Blue Cross) and no-fault insurance benefits from respondent Illinois Farmers Insurance Company (Illinois Farmers). Suchy settled with the tortfeasors and sued Illinois Farmers for underinsured motorist (UIM) benefits. The district court reduced the jury verdict by the amount of Blue Cross's medical insurance payments to Suchy, which the court considered a collateral source. On appeal, Blue Cross argues that its medical insurance payments should have been included in the verdict because it had asserted an equitable subrogation interest in the UIM award. We affirm.

## FACTS

Robert Suchy was injured in a motor vehicle accident with an intoxicated person, Nancy Brown. Suchy's no-fault carrier, Illinois Farmers, paid $20,000 in medical expenses. Suchy's health insurance carrier, Blue Cross, paid medical bills in the amount of $156,564.30, for which it asserted a subrogation interest.

Suchy sued Brown and the dram shop that had served her intoxicating beverages on the evening of the accident. Brown's liability insurer settled for $80,000, and the dram shop's insurer settled for $21,000. From that settlement, Blue Cross agreed to accept $20,319.56. Suchy and Blue Cross signed a release of claims against Brown and the dram shop. The release stated that the parties' settlement did not affect Suchy's UIM claim against Illinois Farmers; however, the release did not indicate whether Blue Cross intended to retain a subrogation interest in the UIM claim.

Suchy sued Illinois Farmers for UIM benefits and a jury awarded him $387,075.12. Based on the award, the district court issued an order for judgment. The following day, Blue Cross's attorney asserted a subrogation

interest in the amount of its prior payment of $156,564.30, reduced by the payment of $20,319.56 from the settlement with Brown and the dram shop.

After conducting a hearing on collateral sources, the district court found that Blue Cross had not assigned to Suchy any claimed subrogation interest in the UIM proceeds and that Blue Cross had not asserted any subrogation interest in the UIM proceeds until after the verdict was rendered. The court concluded that Blue Cross had no subrogation interest in the UIM award, either contractual or equitable. The court also concluded that even if Blue Cross had such an interest, it was not timely asserted.

## ISSUE

Did the district court err by concluding that Blue Cross did not have an equitable subrogation interest in the UIM award?

## ANALYSIS

A trial court must reduce a jury award by the amount of collateral sources that have been paid to a plaintiff. Minn.Stat. § 548.36, subd. 3(a) (1996). Collateral sources include medical insurance payments related to the plaintiff's injury. *Id.*, subd. 1(2).

A primary purpose of the collateral source statute is to avoid double recovery by a plaintiff. *Imlay v. City of Lake Crystal,* 453 N.W.2d 326, 331 (Minn.1990). Therefore, if a plaintiff has received a payment for which a subrogation right has been asserted, the court cannot include that payment in its determination of collateral sources. Minn.Stat. § 548.36, subd. 2(1).

Whether a party has a right of subrogation is a question of law, subject to de novo review. *Fire Ins. Exchange v. Adamson Motors,* 514 N.W.2d 807, 809 (Minn.App. 1994). "Subrogation rests on the maxim that no one should be enriched by another's loss." *Medica, Inc. v. Atlantic Mut. Ins. Co.,* 566 N.W.2d 74, 77 (Minn.1997) (quoting 6A John A. Appleman, *Insurance Law & Practice* § 4054, at 143 (1972)).

Blue Cross argues that it is entitled to assert a claim of equitable subrogation against the UIM proceeds because Suchy was injured by a drunk driver; therefore, the automobile insurance industry rather than the health insurance industry should be primarily responsible for Suchy's injuries. In support of this argument, Blue Cross cites *McIntosh v. State Farm Mut. Auto. Ins. Co.,* 488 N.W.2d 476, 479 (Minn.1992), where the court stated that the purpose of UIM coverage is to protect a plaintiff against the risk that defendant driver is underinsured and unable to pay plaintiff's damages. Blue Cross concludes that because a UIM action focuses on the underinsured driver, it is equitable that the UIM carrier, rather than a health insurance carrier, should assume the primary risk of coverage for accidents caused by an underinsured driver. We disagree.

Equitable subrogation is a common law principle, which exists "to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it." *Northern Trust Co. v. Consolidated Elevator Co.,* 142 Minn. 132, 138, 171 N.W. 265, 268 (1919). Subrogation "will never be enforced when the equities are equal * * *." *Id.* Because the equities between Blue Cross and Illinois Farmers are equal, we conclude that equitable subrogation is inappropriate here.

Our conclusion is supported by the supreme court's recent decision in *Medica,* 566 N.W.2d 74, which also involved a health insurer's claim of equitable subrogation. In that case, the health insurer paid medical benefits to insureds who were injured on property owned by several churches. The health insurer then claimed a right to equitable subrogation in the proceeds paid to the plaintiffs from the church's general liability policy. The *Medica* court affirmed the conclusion that the equities between the health insurer and the general liability insurer were equal, and held that the health insurer's claim of equitable subrogation was inappropriate. *Id.* at 79.

Blue Cross attempts to distinguish *Medica* on the basis that the plaintiffs' injuries in *Medica* were not caused by tortfeasors. This distinction is irrelevant. In this action, Suchy is seeking recovery from his own UIM insurer, not a tortfeasor, and we agree with

the Wisconsin Supreme Court that in this type of situation, the UIM insurer does not stand in the tortfeasor's shoes. *Employer's Health Ins. v. General Cas. Co.*, 161 Wis.2d 937, 469 N.W.2d 172 (1991).

*Employers Health* involved facts similar to those in the present case. There, a health insurer paid medical benefits to its insured and then asserted a right of subrogation against its insured's claim for uninsured motorist (UM) benefits. The Wisconsin court concluded that although UM coverage is a substitute for coverage that the tortfeasor should have had, the UM insurer does not stand in the shoes of the uninsured tortfeasor. Rather, the court concluded that the UM insurer's obligation to its insured is based on the parties' contractual relationship. *Id.*, 469 N.W.2d at 178.

As in *Employers Health* and *Medica*, the two insurers in this case, Blue Cross and Illinois Farmers, collected premiums according to the terms of their policies, and both were responsible for their insured's medical expenses. Under these facts, we conclude that neither Blue Cross nor Illinois Farmers is more responsible than the other for Suchy's medical expenses.

Blue Cross argues that because the law requires UIM coverage, the balance of the equities shifts in its favor. The *Employers Health* court rejected a similar argument, and we agree with the Wisconsin court's reasoning that "statutory liability without any finding of wrongdoing does not provide a sufficient basis for subrogation." *Id.* Simply stated, the reason for Suchy's coverage is not important; the controlling fact is the existence of that coverage, which favors neither Blue Cross nor Illinois Farmers.

We emphasize that Blue Cross is asserting equitable subrogation, rather than contractual (i.e., conventional) subrogation. Blue Cross easily could have drafted its policy to include a right of conventional subrogation.[1] We further note that our decision might have been different had Illinois Farmers commit-

ted some "wrongful" act, such as denying coverage under its policy. *Cf. Strand v. Illinois Farmers Ins. Co.*, 429 N.W.2d 266, 270–71 (Minn.App.1988) (concluding that health insurer who had paid its insured's medical expenses was entitled to subrogation against insured's no-fault insurer, which had wrongfully denied coverage). But in the absence of a policy provision establishing subrogation rights or any wrongful conduct by Illinois Farmers, Blue Cross has failed to establish a claim of equitable subrogation.

## DECISION

Blue Cross is not entitled to assert an equitable subrogation interest in the UIM award.

**Affirmed.**

---

1. We also note that Blue Cross failed to include in its settlement with Brown and the dram shop any statement that it was retaining subrogation rights. In contrast, the release included a statement that Suchy was retaining his right to sue

Illinois Farmers for UIM benefits. In addition, Blue Cross failed to assert its subrogation claim until after Suchy's action against Illinois Farmers for UIM benefits had been concluded.