**COMMERCIAL UNION INSURANCE COMPANY, Respondent,**

v.

**MINNESOTA SCHOOL BOARD ASSOCIATION, plaintiff-intervenor, Appellant,**

v.

**Andrew Curtis Person, et al., Defendants,**

v.

**Jessica A. Brandt, et al., Third-Party Defendants.**

No. C4–99–614.

Court of Appeals of Minnesota.

Sept. 28, 1999.

Kevin P. Hickey, Bassford, Lockhart, Truesdell, & Briggs, P.A., Minneapolis, MN (for appellant)

George C. Hottinger, Gregory C. Schultz, Erstad & Reimer, Minneapolis, MN (for respondent)

Karen Melling VanVliet, Johnson & VanVliet, St. Paul; and Randall J. Pattee, Cosgrove, Flynn, & Gaskins, Minneapolis, MN (for defendants)

Michael Fargione, Hauer, Fargione, & Love, Minneapolis, MN (for third-party defendants)

Considered and decided by RANDALL, Presiding Judge, KALITOWSKI, Judge, and SCHUMACHER, Judge.

## OPINION

RANDALL, Judge.

On cross-motions for summary judgment, the district court determined the rights of appellant medical insurance provider and respondent underinsured motorist (UIM) carrier. The court ruled that the UIM carrier was entitled to recover the value of the draft it had submitted for the tortfeasor's liability insurance limits and that the balance of the proceeds should be divided pro rata between the UIM carrier and the medical insurer. The court also held that the medical insurer is not entitled to pursue the balance of its subrogation claim against the UIM carrier, which had settled with its insured for less than the UIM policy limits. The medical insurer appeals and the UIM carrier has filed a notice of review. We affirm in part and reverse in part.

## FACTS

The facts are not disputed. Andrew Person was driving his parents' automobile when he was involved in a single-car accident. Jessica Brandt, a passenger in the vehicle, sustained significant injuries. The Persons' vehicle was insured by Prudential Property and Casualty (Prudential) with liability coverage of $100,000. Brandt, a minor, was an insured under her parents' automobile liability policy with Commercial Union (CU), which provided $500,000 in underinsured motorist coverage.

Brandt settled her underinsured motorist (UIM) claim with CU for $424,999 for pain, suffering, disfigurement, and permanent injuries; she settled all her no-fault claims against CU for $1. Prudential tendered its policy limit of $100,000 in settlement of Brandt's negligence claim against the Persons. Pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983) (*Schmidt/Clothier*), CU substituted its draft of $100,000 to Brandt to preserve and protect its right of subrogation against the Persons. Brandt was also covered under a health plan provided by appellant Minnesota School Board Association (MSBA) through her parents' employer. MSBA paid $128,419.41 for Brandt's medical bills.

CU asserted its right of subrogation and brought suit against the Persons. MSBA filed a complaint in intervention. CU then filed a crossclaim against MSBA, seeking a determination of the rights and liabilities of the parties to the CU policy, along with a declaration that MSBA is not entitled to UIM benefits. The Persons and Prudential were permitted, by court order, to deposit $215,000 with the court toward settlement. Prudential paid $100,000; the Persons paid $115,000.

CU moved for summary judgment, arguing that (1) its *Schmidt/Clothier* substitution gave it first priority to the $100,000 paid by Prudential; (2) it had first priority to the $115,000 deposited by the Persons; and (3) under Minnesota law, a medical insurance carrier cannot assert a subrogation claim against a UIM carrier. MSBA filed a cross-motion for summary judgment, arguing: (1) its subrogation interest takes priority over CU's subrogation interest; and (2) it now has a subrogation right to the balance ($75,000) of UIM benefits available under the CU policy.

The district court ruled that CU preserved its right to subrogation pursuant to *Schmidt/Clothier* and was entitled to the $100,000 paid into court by Prudential. The court did not decide which subrogation interest had priority to the Persons' $115,000, but rather applied a pro rata formula by which CU received $88,314.25 and MSBA received $26,685.75. The court then ruled that MSBA could not recover against CU for the remaining UIM benefits. This appeal follows.

## ISSUES

1. Does a medical insurer asserting a conventional subrogation interest have priority to settlement proceeds obtained from a tortfeasor and the tortfeasor's insurer over the competing subrogation claim of a UIM carrier?

2. When a UIM claim has been settled for less than the policy limits, does a subrogated medical insurer have the right to pursue a claim for the balance of available coverage against the UIM carrier?

## ANALYSIS

The parties agree there are no material facts in dispute and agree with the propriety of the district court determining subrogation and priority issues by summary judgment. Summary judgment is appropriate when the parties do not dispute material facts and a determination of the applicable law will resolve the controversy. *Boulevard Del, Inc. v. Stillman*, 343 N.W.2d 50, 52 (Minn.App.1984). Where the facts are undisputed, this court applies a de novo standard of review to determine whether the district court erred in its application of the law. *Medica, Inc. v. Atlantic Mut. Ins. Co.*, 566 N.W.2d 74, 76 (Minn.1997). The existence and extent of subrogation rights is a question of law that we review de novo. *Fire Ins. Exch. v. Adamson Motors*, 514 N.W.2d 807, 809 (Minn.App.1994).

### I.

Subrogation is the substitution of an insurer to the rights of the insured. *Medica*, 566 N.W.2d at 76. "The insurer stands in the shoes of the insured and acquires all of the rights the insured may have against a third party." *Id.* at 77. (citation omitted). Minnesota recognizes both equitable and conventional subrogation. *Id.* Equitable subrogation is derived from common law and places "the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it." *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983) (quotation omitted). Conventional subrogation is contractual and a product of an agreement between the insured and the insurer. *Medica*, 566 N.W.2d at 77. Where the rights of the parties are not governed by the terms of the policy, then the rules of equitable subrogation control. *Westendorf*, 330 N.W.2d at 703. Because subrogation is equitable in origin, even when the right is contractu-

al in nature, the terms of the subrogation are governed by equitable principles, unless the contract explicitly provides otherwise. *Medica*, 566 N.W.2d at 77; *Westendorf*, 330 N.W.2d at 703.

MSBA concedes that in light of CU's *Schmidt/Clothier* substitution, CU is entitled to the $100,000 tendered by Prudential. The parties dispute the existence and extent of each other's subrogation interest in the $115,000 tendered by the Persons. MSBA claims that it has conventional subrogation rights in the remaining $115,000 and that its interest takes priority over any subrogation interest CU may have. CU argues that its *Schmidt/Clothier* substitution allowed it to step into the shoes of Brandt and it now has the exclusive right to pursue subrogation against the Persons and their liability carrier.

■ In Minnesota, a medical insurer may preserve and assert a conventional subrogation claim against UIM settlement proceeds by use of contractual language. In *Suchy v. Illinois Farmers Ins. Co.*, 574 N.W.2d 93, 94–95 (Minn.App.1998), the insured brought an action against his UIM insurer for UIM benefits and the insured's medical insurer intervened. The medical insurer asserted an equitable subrogation claim in the settlement proceeds. *Id.* The district court ruled that the medical insurer had neither an equitable nor conventional subrogation interest in the UIM benefits awarded to the insured. *Id.* at 95. On appeal, this court affirmed the district court's ruling. *Id.* at 96. Noting that subrogation is not enforced when the equities are equal, this court held that a subrogated health insurer is not entitled to assert an equitable subrogation interest against an award of UIM benefits because the equities between a medical and UIM insurer are equal. *Id.* at 95. But the court stated:

> We emphasize that [the health insurer] is asserting equitable subrogation, rather than contractual (i.e., conventional) subrogation. [The health insurer] easily could have drafted its policy to

include a right of conventional subrogation. * * * But in the absence of a policy provision establishing subrogation rights * * *, [the health insurer] has failed to establish a claim of equitable subrogation.

*Id.* at 96 (footnote and citations omitted).

■ Here, MSBA's claim is not based on equitable subrogation, but rather it is asserting a conventional subrogation claim based on contractual language in its policy. The MSBA policy contains a subrogation clause that provides:

> The Plan's Right of Subrogation arises when plan benefits are paid on behalf of a covered employee or any covered dependant as a result of illnesses or injuries for which another party is responsible.

CU argues this language is ambiguous because the use of "another party" is reasonably read to mean only the tortfeasor. CU contends that the MSBA policy language does not confer any subrogation rights on MSBA, much less priority rights, because neither CU nor Brandt is the tortfeasor. We disagree.

In *Medica*, the supreme court interpreted similar policy language. There, a health insurer paid medical benefits to its insureds that were injured on property owned by several churches. 566 N.W.2d at 76. The health insurer asserted conventional subrogation rights against the churches' liability insurer for medical expenses paid to its insured. *Id.* at 77. One insured's medical expenses were governed by the following policy language:

> If you are injured and receive HMO *benefits* under the Contract, Medica Choice shall have the right to subrogate against any party, individual or other entity who may be legally responsible for your injuries.

*Id.* This court construed the policy language to mean that the health insurer could subrogate "only against an entity that is legally responsible for all of an injured member's injuries." *Medica, Inc.*

*v. Atlantic Mut. Ins. Co.*, 550 N.W.2d 635, 638 (Minn.App.1996). The supreme court reversed, holding that this construction was too narrow and that " 'responsible for your injuries' means a party responsible for payment of medical expenses incurred as a result of those injuries." *Medica*, 566 N.W.2d at 78. The court held that the health insurer was entitled to subrogate against the liability carrier. *Id.* at 79.

The language contained in the MSBA subrogation clause is nearly identical to the policy language contained in *Medica*. There is little difference between MSBA's use of "another party" and the "any party" language found in *Medica*. Similarly, MSBA's use of "responsible" is broader than the term "legally responsible" used in *Medica*. Like the court in *Medica*, we conclude that

> [t]he plain language of the policy could be reasonably interpreted to mean that [the medical insurer] may assert a subrogation right against more than one party, any of whom may be responsible for some of the insured's injuries and any of whom may or may not be a tortfeasor.

*Id.* at 78.

Because Brandt's damages arose out of an automobile accident involving an underinsured motorist, CU, as underinsurer, is "closer to the risk" and the party primarily responsible for paying medical expenses incurred by Brandt as a result of the accident. Applying *Medica*, we conclude that MSBA may assert a conventional subrogation claim against the $115,000 tendered by the Persons.

■ CU argues that under the "full recovery" rule, MSBA is not entitled to subrogation because Brandt was not fully compensated for her injuries.[1] MSBA insists that the full recovery rule is an equitable rule that does not apply in a dispute between two insurers over the priority to settlement proceeds. We disagree with CU's argument.

■ "The general rule in Minnesota is that subrogation will be denied prior to the insured's full recovery." *Hershey v. Physicians Health Plan of Minn., Inc.*, 498 N.W.2d 519, 520 (Minn.App.1993) (citing *Westendorf*, 330 N.W.2d at 703). Here, the district court found that Brandt was fully compensated for her injuries. This finding is not challenged on appeal as clearly erroneous and it is therefore "considered as true on appeal." *Gamble–Skogmo, Inc. v. St. Paul Mercury Indem. Co.*, 242 Minn. 91, 103, 64 N.W.2d 380, 388 (1954) (citations omitted). Because Brandt was fully compensated for her injuries, the full recovery rule does not limit the medical insurer's subrogation rights.

■ We conclude further that MSBA has priority over CU's subrogated claim because its right to subrogation came into existence almost two years before CU's right to subrogation. The right of subrogation arises once the subrogee makes payment to its insured. *Schmidt*, 338 N.W.2d at 261. It is undisputed that MSBA began making payments to Brandt for her medical expenses shortly after the accident. CU did not make its first payment until two years after the accident. Thus, applying a first-in-time analysis, MSBA's right of subrogation came into

1. We reject CU's argument that MSBA is not entitled to the $115,000 because the MSBA policy failed to comply with the requirements of Minn.Stat. § 62A.095, subd. 2 (1998). At the time the MSBA policy was written and when the accident occurred in October 1994, Minn.Stat. 62A.095, subd. 2 had not been enacted. *See* 1995 Minn. Laws ch. 219 § 1. The policy was, therefore, not governed by the requirements set forth in the statute. Because application of this provision would impose a new and unanticipated obligation on MSBA and alter the rights it had acquired under its policy language, we refuse to apply Minn.Stat. § 62A.095, subd. 2 in this case. *See McClelland v. McClelland*, 393 N.W.2d 224, 226 (Minn.App.1986), *review denied* (Minn. Nov. 17, 1986) (holding court is to apply law in effect at time of decision, unless it would alter matured or unconditional rights or "impose new and unanticipated obligations on a party") (citation omitted).

existence before CU's right to subrogation. On this basis, MSBA's right of subrogation has priority. The district court erred when it applied a pro rata formula to divide the remaining (Persons') $115,000 in liability settlement proceeds.

## II.

 MSBA argues that it is entitled to assert its right of subrogation against the remaining $75,000 of underinsured motorist coverage still available under the CU policy. CU argues that the statutory no-fault scheme was not intended to confer any rights in favor of a health insurer against an UIM carrier.

As a subrogee of Brandt, MSBA stands in the shoes of, and has the same rights as, Brandt. *See Medica*, 566 N.W.2d at 77 ("The insurer stands in the shoes of the insured and acquires all of the rights the insured may have against a third party." (citation omitted)). Brandt agreed to settle her claim against CU for less than the policy limits. By doing so, she waived any rights to the remaining UIM benefits available under the policy. Brandt has no right to additional UIM benefits. As the subrogee of Brandt, neither does MSBA. We hold that MSBA cannot pursue the remaining $75,000 under CU's UIM policy.

## DECISION

The district court's ruling that CU is entitled to recover the amount of its draft from the proceeds of the settlement with the tortfeasor and the tortfeasor's insurer is affirmed. The court erred in apportioning the remaining settlement proceeds on a pro rata basis. MSBA has priority to the settlement proceeds under the contractual provisions and because (a) CU is "closer to the risk" of a loss incurred as a result of an automobile accident; (b) MSBA's subrogation interest arose first in time, when benefits were paid to the insured.

MSBA is not entitled to pursue its subrogation interest against the balance of the UIM policy because the insured has no rights to that balance. MSBA stands in the shoes of its insured.

**Affirmed in part, reversed in part.**