# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-2159
_____

Berkley Regional Insurance Company, as subrogee of Schnoeckers, Inc., doing business as BI Worldwide, doing business as Berkley Technology Underwriters

*Plaintiff - Appellant*

v.

John Doe Battery Manufacturer; Shenzhenshi Yishengda Dianzi Youxian Gongsi, doing business as Yishda

*Defendant*s

Amazon.com, Inc.

*Defendant - Appellee*

Shenzhen Maxpower Technology Co., Ltd.

*Defendant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 22, 2025
Filed: April 27, 2026
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

To certify, or not to certify, that is the question. We need to know whether, under Minnesota law, Amazon is strictly liable for a defective product it offered, stored, and shipped, even though someone else was the seller. The Minnesota Supreme Court ought to be the one to decide this novel legal issue, so we give it the right of first refusal. *See* Minn. Stat. § 480.065, subd. 3 (allowing it to "answer" a certified "question of law").

I.

When Rochelle Zappa's cellphone would not hold a charge, she searched Amazon for a replacement battery. She picked one sold by a Chinese company named Yishda that the website advertised as "Amazon's Choice."

The company took part in the "Fulfillment by Amazon" program, a service that allows sellers to use Amazon's infrastructure, including its website, its warehouses, and its delivery drivers. For a fee, Amazon handled storage, order fulfillment, returns, and customer service. *See Pickard v. Amazon.com, Inc.*, 387 So.3d 515, 518 (La. 2024) (describing Amazon's order-fulfillment service). Here, it resulted in an Amazon driver delivering a Yishda battery inside an Amazon bag to her doorstep.

Disaster struck just two weeks later. When she plugged in her phone at work to charge the battery, it fizzled, sparked, and then burst into flames. Smoke soon enveloped the office. By the time firefighters put out the fire, it had caused $3,881,280 in damage.

Berkley Regional Insurance Company, her employer's insurer, initially footed the bill. Rather than bearing the cost alone, it sued Amazon, Yishda, and the then-unknown manufacturer of the battery in Minnesota state court. *See Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 76–77 (Minn. 1997) (discussing an insurer's

"subrogation rights," which allow it to "stand[] in the shoes of the insured and acquire[] all of the rights the insured may have against a third party"). After Amazon removed the case to federal court, Berkley dropped the claims against everybody else.

Hoping to get the legal issue back in front of a state court, Berkley urged the district court to certify a question about whether Amazon was strictly liable for the damage. *See* Minn. Stat. § 480.065, subd. 3; *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court . . . ."). Rather than getting help from the Minnesota Supreme Court, it decided to make an "*Erie* guess" that online marketplaces like Amazon are not strictly liable when they fulfill orders for third parties. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). On appeal, Berkley once again requests certification. *Cf. Floyd Cnty. Mut. Ins. Ass'n ex rel. McGregor v. CNH Indus. Am. LLC*, 18 F.4th 1024, 1027 n.2 (8th Cir. 2021) (declining to certify a question because the party "did not request [it] until after the district court's adverse judgment").

II.

"The Minnesota Supreme Court has not confronted a situation like this one," so "our task" would ordinarily be to "predict what it would do." *Cincinnati Ins. Co. v. Rymer Cos.*, 170 F.4th 1159, 1162 (8th Cir. 2026) (citation omitted). But in this case, rather than take a shot in the dark, "the better practice" is to have it weigh in first. *Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc.*, 938 F.2d 90, 93 (8th Cir. 1991). We do so for several reasons. *See Godfrey v. State Farm Fire & Cas. Co.*, 11 F.4th 601, 603 (8th Cir. 2021) (noting that whether to certify a question is a "discretion[ary]" call (citation omitted)).

A.

The first is the "novelty of the question." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); *see Hatfield ex rel. Hatfield v. Bishop Clarkson Mem'l Hosp.*, 701 F.2d 1266, 1267 (8th Cir. 1983) (certifying a novel issue because state law was "unsettled"). The type of transaction in this case was not possible a few decades ago: Amazon started operating in 1994, its online "marketplace" began in 2000, and it introduced its "Fulfillment by Amazon" program in 2006. The Minnesota Supreme Court, by contrast, has not decided a significant chain-of-commerce strict-liability case involving a retailer since pre-internet times. *See Farr v. Armstrong Rubber Co.*, 179 N.W.2d 64, 72 n.1 (Minn. 1970) (extending strict products liability to retailers). As a sister circuit has put it, "the mechanics of Amazon's business model are novel." *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 201 (5th Cir. 2020). Deciding this case would require us to apply decades-old product-liability rules to what it does, something Minnesota courts have yet to do.[1]

Unfortunately, the Restatement (Third) of Torts, which Minnesota courts often consult, offers general guidance but no clear answer. *See Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 387 (Minn. Ct. App. 2004) (noting that Minnesota courts "have relied on [the] Restatement (Third) of Torts when considering the law of products liability"); *see also Farr*, 179 N.W.2d at 70–71 (applying the Second Restatement). It imposes strict liability on parties "engaged in the business of selling or otherwise distributing products." Restatement (Third) of Torts: Products Liability § 1 (Am. L. Inst. 1998). Amazon likely does not count as a "sell[er]" of third-party goods because it never takes title to them. *Id.*

It is a closer call, however, whether it "distribut[es]" them through its fulfillment program. *Id.* There is little doubt it "provides . . . product[s] . . . for use

_____

[1]Minnesota statutes are mostly silent too. One statute extends certain protections to sellers, but it does not "create a cause of action in strict liability in tort or based on other legal theory." Minn. Stat. § 544.41, subd. 4. Nor does it say anything about existing products-liability law. *See id.*

or consumption." *Id.* § 20(b). But it does so only after a sale, which would expand distribution beyond its definition: a "commercial transaction *other than a sale*." *Id.* (emphasis added). Even if Minnesota courts look to the Restatement for answers, the one it gives here just "adds to our uncertainty." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 764 (7th Cir. 2013) (certifying a question to the Minnesota Supreme Court).

Unsurprisingly, the lack of clear guidance has resulted in a nationwide split. Many courts have held Amazon strictly liable for products ordered through its fulfillment service. *See Pickard*, 387 So.3d at 523; *Loomis v. Amazon.com LLC*, 277 Cal. Rptr. 3d 769, 784–85 (Cal. Ct. App. 2021); *State Farm Fire & Cas. Co. v. Amazon.com Servs., Inc.*, 137 N.Y.S.3d 884, 889 (N.Y. Sup. Ct. 2020); *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 390 F.Supp.3d 964, 972–73 (W.D. Wis. 2019). Others have not. *See Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 112 (Tex. 2021); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 144 (4th Cir. 2019) (applying Maryland law). And some have just addressed regular Amazon sales. *See, e.g.*, *Stiner v. Amazon.com, Inc.*, 164 N.E.3d 394, 396 (Ohio 2020); *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 425 (6th Cir. 2019). The point is that we would be wading into murky waters if we tried to guess what the Minnesota Supreme Court would do. *See Hatfield*, 701 F.2d at 1267 (certifying a question because the court was "without guidance . . . as to the issue presented").

B.

Even if we happened to guess right, there are other reasons to let it lead the way. *See Lehman Bros.*, 416 U.S. at 391 (explaining that certification "helps build a cooperative judicial federalism"). For one, whether online marketplaces are strictly liable for the third-party products they offer is an issue that is likely to "recur[]." *Hatfield*, 701 F.2d at 1268 (quoting *State ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 n.29 (5th Cir. 1976)); *see Lyon Fin. Servs.*, 732 F.3d at 766 ("Certification is also appropriate when the case concerns a matter of vital public concern [and] where the issue likely will recur in other cases . . . ."). It is, in short,

a question of widespread importance that affects not only Amazon, but the millions of Minnesotans who buy products online every year. It is also one that may escape state-court review, just like this case did, given the interstate (or even global) nature of these transactions. Certification locks in an answer.

For another, answering the question involves tradeoffs that a state's highest court is in a unique position to make. *See Hatfield*, 701 F.2d at 1267. One consideration, as the Minnesota Supreme Court has put it, is the "public-policy demand[] to protect consumers from the inevitable risks of bodily harm created by mass production and complex marketing conditions." *McCormack v. Hankscraft Co.*, 154 N.W.2d 488, 500 (Minn. 1967). On the other side are "the severe economic consequences . . . [from] the abrupt imposition of [strict liability]." *Ferguson v. N. States Power Co.*, 239 N.W.2d 190, 194 (Minn. 1976); *see Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 99–100 (Minn. 1989) (declining to extend it to successor corporations because it would be "inconsistent with elementary products liability principles," threaten "economic annihilation" of some businesses, and present "a radical change in the principles of corporation law"). An age-old debate emerges: *who* gets to balance them and extend products-liability law in Minnesota, courts or the legislature? *See Niccum*, 438 N.W.2d at 100. Wading into these murky waters would be at our own risk.

## C.

Finally, the legal question we have is about as clean as it gets. Whether Amazon is strictly liable for Yishda's batteries depends on *undisputed* facts. The record is clear that, as the seller, Yishda listed the batteries online, sent them to warehouses around the country, and left the rest to Amazon. The "purely legal" question presented, *Exec. Plaza, LLC v. Peerless Ins. Co.*, 717 F.3d 114, 118 (2d Cir. 2013), which "may be determinative" of the case, Minn. Stat. § 480.065, subd. 3, is whether Amazon is strictly liable for putting them in the hands of end users like Rochelle Zappa.

We understand the downsides of certification. It takes time and increases the burdens on the parties. *See McKesson v. Doe*, 592 U.S. 1, 5 (2020). We are sensitive to these concerns, but cooperative federalism comes at a cost, *see Stanford ex rel. Phillips v. Brandon Nursing & Rehab. Ctr., L.L.C.*, 160 F.4th 118, 141 (5th Cir. 2025) (Oldham, J., dissenting) (stressing the drawbacks), which the well-developed arguments in the parties' existing briefing will hopefully mitigate. The advantage, of course, is that certification, which the legislatures of Minnesota and 48 other states have adopted, will give an answer that is not only binding on these litigants, but future ones as well. *See* Minn. Stat. § 480.065, subd. 9; *see also* Jason A. Cantone & Carly Giffin, Fed. Jud. Ctr., *Certified Questions of State Law: An Examination of State and Territorial Authorizing Statutes* 1 (2020).

## III.

We accordingly certify the following question to the Minnesota Supreme Court:

> Under Minnesota law, if an e-commerce company allows an unrelated party to sell a defective product through its website and provides order-fulfillment services for the sale, is it strictly liable for any harm caused by the defect?

We invite it to reformulate the certified question as it sees fit, *see* Minn. Stat. § 480.065, subd. 6(a)(3), and we stay our proceedings while the matter is under consideration.

_____